## BOOTHE vs. ESTES.

The proceedings of a justice's court, to be valid, must show affirmatively that the subject matter of the suit is within the jurisdictional limits prescribed for the court; but when the judgment and proceedings are brought collaterally in question, and the jurisdiction of the subject matter and person or thing, affirmatively appears, they will not be held null and void for such irregularities as would merely be grounds of reversal.

An account against the defendant in favor of the plaintiff, for an "account bought of the estate" of a deceased person, held to be a sufficient foundation of a suit by attachment before a justice — as the plaintiff might by proof on the trial, have established a direct liability on the part of the defendant for the amount of the account.

A judgment in attachment, when questioned collaterally, will not be held null and void, because, the affidavit stated that the defendant *"conceals or absents himself,"* &c.

The correct practice, on a judgment in attachment, is for the execution to direct the officer to sell the property taken in the attachment: but though the execution be generally against the goods, &c., of the defendant, the informality will not avoid the sale, if the officer sells the property attached and none other.

Where property is left with another under an agreement to deliver it when demanded, or *account for it*, even if the bailee had the right to elect to retain and pay for it, his refusal to deliver, and denial of the bailor's title, show a conversion of the property, and not an election to retain and pay for it.

*Appeal from the Circuit Court of Lawrence County.*

Hon. BEAUFORT H. NEELY, Circuit Judge.

FAIRCHILD, for the appellant. That the refusal to deliver the cow and calf on the written demand of Boothe, and the reasons given for such refusal, were a conversion. 2 *Saund.* 47 *f.*, 47 *p.; Parker vs. Goden*, 2 *Str.* 813; *Grant vs. King*, 14 *Verm.* 367.

The account upon which the judgment in the attachment was rendered, might have been the ground of a good cause of action against Tarter for Mrs. Crawford; she may have purchased it at his request and on his promise to pay: Tarter's liability to her on the account was a matter of evidence.

That the affidavit for the attachment was sufficient. *Slicker vs. The State*, 13, *Ark.* 397; *Castillan vs. Jones*, 1 *Seld.* 164.

The Circuit Court had no right to determine in this collateral way, upon the jurisdiction of the justice of the peace.

BYERS & PATTERSON, for the appellee. From the evidence, it is clear that Boothe could not maintain the action of Trover, as it appears that the defendant, under his contract, had a right to retain the property, and upon demand of the delivery being made and his refusal, he became liable, under his contract, to, account for its value; and his election to retain and pay for the property, was made upon the demand and refusal to deliver, and Boothe's remedy was upon the contract for the value.

Mr. Chief Justice ENGLISH delivered the opinion of the Court.

TROVER, brought by Boothe against Estes, for the conversion of a cow and calf. The cause was tried upon the pleas of not guilty and limitation; verdict for the defendant, and brought up

8B

on exceptions taken by the plaintiff to instructions given by the court to the jury. The evidence upon which the instructions were based, is, in substance, as follows:

Boothe claimed the property, by virtue of a purchase at a constable's sale, under proceedings by attachment, before a justice of the peace, in favor of Letitia Crawford, against Robert Tarter, and introduced a transcript thereof as evidence. From this, it appears, that on the 29th day of February, 1848, Letitia Crawford filed for suit before a justice of the peace of Lawrence county, an account as follows:

1846.          " *Robert Tarter*,

To LETITIA CRAWFORD,          *Dr.*

Account bought of the estate of Colby Craw-
ford, deceased,          $47 50."

On the same day, the following affidavit was filed before the justice:

"I, Ferguson Boothe, being duly sworn, do depose and say, that Robert Tarter is justly indebted to Letitia Crawford, in the sum of forty-seven dollars and fifty cents, which sum is now due and owing, and that the said Robert Tarter, as I believe, so *conceals or absents* himself that the ordinary process of law cannot be served on him; and that unless an attachment shall be issued, there is reason to believe that said debt will be lost or greatly delayed."

Thereupon, the justice issued an attachment against the goods, &c., of Tarter, with a clause of summons for him, and garnishment against one Faulkenburg, under which the constable attached the cow and calf in controversy, executed the process on the garnishee, and returned *non est* as to Tarter.

On the return day of the attachment, (11th March, 1848,) the justice fixed the 7th of April following, as the day of trial, made an order for the defendant to appear on that day, and answer the

plaintiff's demands, &c., and delivered a copy thereof to the plantiff, to be posted up in public places, &c., as required by the statute. *Digest, ch.* 16, *sec.* 10, 11, 12.

On the day fixed for the trial, it appears, that the plaintiff in the attachment appeared, and proved that the notice had been duly posted, and the defendant in the attachment failing to appear, the justice proceeded to render judgment against him for $47 50, the amount of the plaintiff's demand; and, also, rendered judgment against the garnishee, upon his answer of indebtedness to Tarter, for $18.

Afterwards, the plaintiff in the attachment filed with the justice a bond of indemnity to Tarter, as required by *sec.* 36, *ch.* 16, *Digest;* and, thereupon, the justice issued an execution upon the judgment against Tarter, commanding the constable to levy the debt and costs "*of the goods and chattels of the said Tarter, according to law.*" The execution was against his goods generally, and not specifically to sell the property attached.

Under this execution, the constable levied upon, and sold the cow and calf in controversy, and Boothe, the plaintiff in the action of Trover, purchased them for $10, on the 11th May, 1848.

Lasater, the constable, testified, that when he attached the cow and calf, he found them in the possession of Estes, who was the father-in-law of Tarter, and who pointed them out as the property of Tarter. That he, (the witness,) permitted them to remain in the care of Estes, after they were attached, until the day of sale under the execution, when Boothe bought them.

That Boothe appeared as the agent of Mrs. Crawford, at the trial of the attachment suit before the justice, and managed the case for her, and on the morning of the day of sale, the witness received a note from her directing him to pay the proceeds of the sale to Boothe.

The constable further testified, that after Boothe had purchased the cow and calf, which were sold at the house of Estes, a conversation occurred between Boothe and Estes, to the effect following:

Estes said that the cow was one that he had given to his daughter, the wife of Tarter. That Tarter was then gone, but would soon be at home, and that Tarter would not take fifty dollars for the cow if he were there.

Boothe replied that he did not want the cow, that she could stay there until Tarter got back, when, if he chose, he could pay the money due Mrs. Crawford, on a judgment she had against him, and if he did not do so, Estes could *deliver* the *cow* to Boothe, *or account for her*, when called upon by Boothe thereafter, to which Estes assented, and the cow was left with him by Boothe, and her calf was also left upon the same condition. They were worth $10.

Tucker, a witness for plaintiff, testified that in the winter of 1849, he took an order from Boothe to Estes, for a certain cow and her increase, and presented it to him. Estes refused to give up any cow or cattle, and said that Boothe had no cattle there. That a cow had been left there by him, which once belonged to Tarter, and was sold, as his property, to Boothe, under an execution, in favor of Mrs. Crawford, but that Tarter had been back, got a new hearing of the case, and the cattle had been decreed to be returned to him. Witness requested Estes to protest the order, to protect him (the witness) in his dealings with Boothe. Estes told witness to do what he pleased with the order, and he then, in the presence of Estes, and with his consent, endorsed upon it, "*Protested*—THOMAS ESTES." Witness did not demand of Estes pay for the cow and calf, or their value, but presented the order to him, copied below, and he refused as above stated, &c.

The plaintiff read the order to the jury, which follows:

"Mr. THOMAS ESTES: *Sir*—Send me the cow and yearling that I purchased at the sale of Robert Tarter, under the execution, and left with you, and all the increase, by Mr. Henry G. Tucker; and, in so doing, you will oblige yours, &c.,

F. BOOTHE."

*Dec. 20th*, 1849.

Endorsed, "Protested,　　　　　　　THOMAS ESTES."

The court charged the jury, in effect, that the whole proceedings in the attachment suit, were null and void, and that the plaintiff (Boothe) derived no title to the cow and calf, by virtue of his purchase, under them.

This conclusion is based upon three objections, which are specified in the instructions of the court.

1st. That the account filed before the justice as the foundation of the attachment suit, imported, on its face, no legal liability on the part of Tarter to Mrs. Crawford—no cause of action between them.

2d. That the attachment affidavit being in the alternative, that is, that Tarter *concealed* or *absented* himself, was no affidavit at all, and did not authorize the issuance of the attachment.

3d. The execution ran against the goods of Tarter generally, and not specifically against the property attached.

Three of the instructions given by the court to the jury, were upon another point in the cause, and to this effect:

That, if by agreement between the parties, Boothe left the cow and calf with Estes, to be surrendered by him when thereafter demanded, or *accounted* for, this gave to Estes the right when the demand was made, either to return the cattle to Boothe or retain them, and account for their value : and that having refused to surrender them when demanded, he thereby made his election to keep them, and pay their value ; and hence, Boothe could not maintain Trover, but would have to resort to an action upon the contract, for the value of the cattle. In other words, upon the state of the proof, the action should have been *ex contractu*, and not *ex delicto*.

It is well settled, by the decisions of this court, that presumptions are not to be indulged in favor of the jurisdiction of a justice's court. It being a court, not of general, but of special and limited jurisdiction, its proceedings to be valid, must affirmatively show that the subject matter of the suit is within the jurisdictional limits prescribed for the court. *Reives vs. Clark*, 5 *Ark.* 28 *; Anthony ex parte, ib.* 366 *; Pendleton vs. Fowler*, 1

*Eng. R.* 41 ; *Levy vs. Sherman, ib.* 182 ; *Latham vs. Jones, ib.* 372 ; and subsequent cases based upon these decisions.

But surely where the judgment and proceedings of a justice's court are brought collaterally in question, and the jurisdiction of the subject matter and person or thing, if the proceedings be *in rem,* affirmatively appear, they are not to be held null and void for such irregularties, as would merely be grounds of reversal, &c., in a direct proceeding to review them.   See *Evans & Black vs. Percifull,* 5 *Ark. R.* 428, and authorities cited.

In the attachment suit, introduced collaterally as evidence in the case before us, the foundation of the action was a money demand upon an open account, for a sum less than one hundred dollars, and within the jurisdiction of the justice of the peace. It appears, also, that the property attached, in its character, was subject to such attachment, and found within the territorial limits of the jurisdiction of the justice.

The jurisdiction of the subject matter, and of the *thing* affirmatively appearing upon the face of the proceedings, are the objections urged against their validity, mere errors ; or, are they such as to render the whole proceedings utterly null and void ?

1st. The first objection is, that the account, filed as the foundation of the suit, imports, upon its face, no legal liability on the part of Tarter to Mrs. Crawford.

In *Levy vs. Sherman,* 1 *Eng.* 182, and *Latham vs. Jones, ib.* 371, (in both of which cases the validity of the proceedings were directly questioned on appeal) this court held that the account, or instrument filed with the justice, as the foundation of the suit, must disclose, upon its face, a right of action in the plaintiff against the defendant, or be such as to admit of evidence *aliunde* of such right of action.

In this case, the demand filed with the justice, was made out in the name of Mrs. Crawford against Tarter, and purports to be, for the amount of an account bought by her of the estate of Colby Crawford, deceased, upon Tarter.

Accounts not being assignable by law, so as to vest the legal

right of action in the assignee, had the original account been filed in the name of Colby Crawford, or his administrator, against Tarter, the suit being in the name of Mrs. Crawford, as plaintiff, a different question would have been presented for consideration than the one before us.

But it seems that the original account was not filed, but a new account made out in the name of Mrs. Crawford, for the gross amount of the original account. Could she, by any possible proof, have established upon the trial a liability on the part of Tarter, directly to her, for the amount of the account? Most unquestionably she could. Had she proven, for example, that she purchased of the estate of Colby Crawford an account upon Tarter for $47 50, and that he afterwards undertook, and promised to pay the amount of it to her, his liability to her would thereby have become direct, and the discharge of his liability to the original creditor by her, would have been a sufficient consideration to make his promise to her legal and binding upon him. The case, therefore, is within the rule laid down in the decision above referred to.

2d. To authorize an attachment to be issued by a justice, the statute (*Digest, ch.* 16, *sec.* 1,) requires an affidavit to be made by the creditor, or some one for him, that the defendant is indebted to him in a sum not exceeding $100, "that there is reason to believe that the defendant is about to remove himself, or his effects, out of the State, *conceals* himself so that the ordinary process of law cannot be served on him, or is a non-resident of the State, &c.

The affidavit in question is substantially in the form prescribed by the statute, except in this, that it states that Tarter *"conceals or absents himself,"* &c. There is a material difference between *concealment* and *absence;* and had Tarter, or any one for him, appeared before the justice before judgment, and presented this objection in the proper mode, or had it been raised in any direct proceeding to review the judgment of the justice, it might, perhaps, have been held to be an error, but surely the whole pro-

ceedings are not to be held null and void when questioned collaterally, on account of such irregularity.

3d. It is objected that the sale under the execution was void; because it ran against the goods generally of Tarter, and not the particular property attached. The proceeding by attachment is a proceeding *in rem*, (when the defendant is not served with process) to condemn the property attached to the satisfaction of the debt of the plaintiff. It is doubtless the correct practice for the execution to direct the constable to sell the property taken in the attachment, because when the judgment is exclusively *in rem*, no other property could legally be sold under the execution. But, in the case before us, although the execution was against the goods of Tarter generally, the constable sold the attached property, and none other, and the informality of the process would not be sufficient to avoid the sale.

We think all the instructions given by the court to the jury in regard to the validity of the attachment proceedings, were incorrect in not taking the proper distinction between that which is null and void, and that which is merely erroneous.

4th. The three instructions given by the court to the jury, in reference to the agreement between Boothe and Estes, were also erroneous. According to the evidence, Boothe left the cow and calf with Estes for the purpose of allowing Tarter to redeem them, when he returned home, by paying the amount due upon Mrs. Crawford's judgment. If he did not choose to do so, Estes was to deliver the cattle to Boothe, when thereafter demanded, "*or account for them.*"

Let the testimony be put in the strongest view for Estes—let it be assumed that his agreement to return the cattle to Boothe, *or account for them*, gave him the right of election, when the demand was made, to restore the cattle, or keep them and pay their value, as contended by his counsel. When Tucker, the agent of Boothe, made the demand, did Tarter make his election? Did he say that he had concluded to keep the cattle and pay for them? Not at all; but, on the contrary, he merely pro-

tested the order of the plaintiff, declaring that he had no cattle there, and refusing to give up any, saying that Tarter had returned, obtained a new hearing and a decree, that the cattle be restored to him, but no evidence of such decree was introduced.

The refusal of Estes to deliver the cattle, when demanded, and his denial of the title of the plaintiff, surely did not conduce to prove that he elected to keep them, and pay the plaintiff for them under his agreement, but conduced to show such conversion of the cattle, on the part of Estes, as to entitle Boothe to maintain Trover.

The judgment is reversed and the cause remanded for a new trial, &c.

Absent Mr. Justice SCOTT.