B. F. ACKERMAN AND ANOTHER V. HENRY SMILEY.

1. The title and interest of an heir in the real and personal estate of his intestate ancestor become vested and fixed immediately upon the death of the latter ; and such title and interest, though encumbered with the ancestor's debts, are none the less the subject of sale and transfer by the heir, either by a present conveyance or by bond for execution of title when partition of the estate shall be made.

2. A purchaser with general warranty takes not only his vendor's title at the time of the sale, but also whatever title his vendor may subsequently acquire ; and this principle applies to a sale by an heir of a particular tract of land, part of his ancestor's estate, which such heir expects will be allotted to him upon partition of the estate.

3. If a tract of land belonging to an unpartitioned estate is subject to a lease for years, and a person purchases the fee from an heir who expects that particular tract to be allotted to him, taking and duly recording the heir's bond to make him title when the estate shall be partitioned, and then the purchaser also buys up the lease and thereby obtains possession, the lease becomes merged in the fee, and his possession is as purchaser of the fee, and is notice to all the world of his claim to the fee under his recorded title bond.

4. The facts that a vendor was in debt, and was selling off his property as fast as he could, are not in this case deemed sufficient evidence to establish fraud in his sale ; and are of no legal significance, to impeach the vendee's title, when there was no proof that the latter had any knowledge of them.

5. An heir who expected a particular tract of land to be allotted him, sold it and received the purchase-money, executing his bond to make title when partition should be made. The land being afterwards sold by the administrator, the heir bid it off, and prayed the probate court to order the deed to be made direct to his vendee as the equitable owner. It seems that the order should have been made—there having been no liens on the heir's interest when he sold the land.

6. The recitals of a title bond, together with subsequent admissions of the obligor, are considered, under the circumstances of this case, competent and adequate evidence of the payment of the purchase-money by the obligee, whose equitable title was resisted by a purchaser at sheriff's sale, under execution emanating from a judgment rendered against the obligor after the execution of his title bond.

APPEAL from Milam.     Tried below before the Hon. J. M. Onins.

A succinct but clear and comprehensive statement of the material facts will be found in the opinion of the court.

The appellants, B. F. Ackerman and James Ferguson, were plaintiffs in the court below.

*Terrell & Walker*, for the appellants. If the appellants, prosecuting this inquiry as to ownership, looked before their purchase to the occupancy of the land, they indeed found Smiley in possession, but his possession was the possession of the administrator of Mary Ann Bell's estate, under whose sale we claim, and under whose lease Smiley first made entry on the premises by purchasing the lease after his pretended purchase of October 5, 1866. He thus became a tenant for the administrator of Mrs. Bell's estate, and no presumption could arise in the mind of one making inquiry, based on finding him in possession, that he claimed any title to the land inconsistent with or beyond his lease. He could not then, and cannot now disaffirm the title under which he entered. When he attempted this he became himself a trustee, but a trustee *de son tort* by disaffirming the title under which he entered, and assuming in his own right the management of property which belonged beneficially to others. (Le Fort *v.* Delafield, 3 Ranch, 32; McCoy *v.* Scott, 2 Rawle, 222; Hill on Trustees, 174.)

No rule is more clearly settled than that a tenant shall not be permitted during his possession of premises to dispute the title under which he entered. (Smith's Leading Cases, Vol. II., 611.) If a tenant consents to give up possession to a party claiming by title adverse to his own landlord, that party is estopped, as the tenant would have been, from disputing the landlord's title. (Doe *v.* Lady Smith, 4 M. and S., 347; Doe *v.* Mizem, 2 M. and Rob., 56, Smith's Cases, 611.)

No third title can be purchased by an agent or tenant and made use of to defeat that of the landlord. If the tenant after renting the premises acquires rights adverse to the landlord, he is bound to surrender the property before he can be permitted

to assert them. (Brown *v.* Keller, 32 Illinois R., 151 ; Russell *v.* Titus, 3 Grant's Cases, 295.)

There are cases in which it has been held that a tenant, after the termination of his lease may disavow and disclaim his tenancy, so as to compel the landlord to bring his action within the period of limitation ; but even then nothing short of an open and explicit disavowal or disclaimer of the landlord's title, and an assertion of title in himself brought home to the owner, will satisfy the law. Short of this, the party will be regarded as holding in subserviency to the rightful title. (Floyd *v.* Mintsey, 7 Rich. R., 181.)

The appellants are purchasers of whatever title Thompson, administrator, the landlord of appellee, controlled ; and we submit on the authority of the above cases that appellee is estopped, while remaining in possession, from denying the validity of that title, or asserting an equity to override it, prior, in point of time, to the date of his entry.

An inquiry, therefore, into the facts connected with Smiley's possession, would not have been more satisfactory than an inspection of the instrument under which he claimed, for the appellants were not bound to inquire further, after ascertaining that he entered under and attorned to the administrator of the estate.

It is believed that the character of notice given by appellee's attorney at the sale that " the purchaser would buy a lawsuit," was also insufficient to charge the purchaser with notice of his pretended equity. It was held not to be a sufficient notice to assert that " some other person claimed title." (Lolland *v.* Stainbridge, 3 Ves., 478.) So also a notice that " he would " purchase at his peril," will not affect him with notice of an instrument of which he has no other knowledge. (3 Ves., 486.)

To constitute an estoppel in pais as against a party, it is sufficient if there was—

*First.* An admission (or declaration) inconsistent with the evidence which he has proposed to give, or the title or claim which he proposes to set up.

*Second.* An action by the other party on such admission.

*Third.* An injury to him by allowing the declaration to be disproved. (Eazell *v.* Odell, 3 Hill, 219, opinion by Brownson, J.; Love *v.* Barber, 17 Texas.)

All these elements unite in the present case.

If we are correct in the position that the declarations of L. B. Wickson to establish the payment of the purchase-money should have been excluded from the jury, then the bond of October 5, 1866, can be regarded only as a voluntary agreement to make a conveyance, and no constructive trust could arise to affect the title of a subsequent purchaser, even with notice. It has been repeatedly held that when the owner of an estate has voluntarily constituted himself a trustee for other parties, he may, notwithstanding, make a good subsequent conveyance of it to a purchaser who has been made acquainted with the voluntary settlement. (Taylor *v.* Stile, 2 Sugd. V. and P., 159, 9th ed.; Evelyn *v.* Templar, 2 Bro., C. C., 148; Buckle *v.* Mitchell, 18 Ves., 112; Pulvertorf *v.* Pulvertorf, Ib., 84; Powell *v.* Pleydell, 1 Bro., P. C., 124; Hill on Trustees, 4th ed., 506, note S. 1.)

We think there was also error in the refusal of the court to give the third instruction asked by appellant's counsel, viz.; " If the jury believe from the evidence that Wickson was dis-"posing of his property in order to hinder, delay, or defraud his " creditors, and that Smiley had notice of the fact, then he " (Smiley) was a party to the fraud, and will not be allowed to " hold the land as against *bona fide* purchasers or creditors."

The evidence of the witness Thompson established the fact that Wickson, at the time of his pretended sale, was largely in debt, and that he was then " disposing of his property as fast " as he could." The estates of Mary Ann Bell, Elizabeth Wickson, and Sterling Wickson, were all insolvent, which Smiley knew, as appears from the fact that he took Thompson as security that L. B. Wickson would pay off the indebtedness of two of the estates, so as to secure for L. B. Wickson the distributive interest he had promised to convey. We submit that

if the judgment of the court below be affirmed, the principle would be established, that a party in failing'circumstances can place on record a voluntary promise to convey his distributive interest in an insolvent estate, when his interest shall be set aside to him—a period which can never arrive; suffer the party to whom the promise is made to go into possession, not by virtue of his purchase, but under a lease from the administrator; cause him to disaffirm the title under which he entered; and by his own declarations that he had received payment for his interest, defeat the lien of his judgment creditors, when he afterward acquires title by purchase at the administrator's sale.

*W. H. Hamman,* for the appellee.

OGDEN, J.   On the death of a person intestate, all of his estate, both real and personal, vests, at once, in his heirs at law, subject, under the statute, to the payment of his debts.   (Paschal's Digest, 1373.)   But the legal title and interest of the heir becomes fixed, and, whatever that interest may be, it is clearly the subject of sale and transfer, as though it were not encumbered with the debts of the ancestor.   The heir may, therefore, sell or alien at his pleasure his entire interest in the estate of an ancestor, or he may sell his entire interest in any particular portion of that estate, and the courts will protect the purchaser in the interest thus conveyed to him, subject to the rights of other heirs.   The heir may make a present deed of his interest, in any particular portion of the estate, or may give a bond to make a full title when the same shall be set apart to him, and that deed or bond may be enforced against all third parties.

The purchaser of an estate, with covenants of warranty, takes not only the equitable title of the vendor at the time of the sale, but he also takes whatever title the vendor may afterwards acquire, whether by purchase or otherwise.   (4 Kent, 98; Wark *v.* Willard, 13 N. H. 389; Bush *v.* Marshall, 6 Howard, U. S., 284; Brower *v.* McCormick, 4 Watts, 60; Nixon's

heirs *v.* Carco's heirs, 28 Miss., 414; 2 Sugden on Vendors, 689; Logan *v.* Steel, 4 Monroe, 433; and Mays *v.* Lewis, 4 Texas, 38.) If, therefore, appellee in 1866 *bona fide* purchased Wickson's interest, as heir, in the land in·controversy, and took a bond for a perfect title, and Wickson subsequently purchased the same land at administrator's sale, whatever title he might then receive he would take the same in trust for his vendee. It appears that after the purchase by appellee from Wickson, and after he had received a bond for title to the land in controversy, in order to obtain immediate possession of the land thus purchased he bought out the lease of Middleton, which had about one year to run, and has occupied the premises under his purchase since that time. Under such circumstances, if appellee purchased the fee from Wickson, and then purchased the intervening lease from Middleton, then the lease became merged in the greater title, and he acquired the possession not as a lessee but as purchaser, and his possession, under his bond for title duly recorded, would be notice to the · world of his claim under that bond. The bond from Wickson to appellee was duly executed and recorded, and states the consideration to be four thousand seven hundred dollars. We think there can be no question of Wickson's right to sell his interest as heir, at the time he did, provided he did so in good faith, and not for the purpose of defrauding his creditors, if at that time he had any.

We have been unable to discover in the record any sufficient evidence of fraud in that sale from Wickson to appellee, to render the same void or voidable. It appears that for some cause the land sold by Wickson was not partitioned to him, as was anticipated at the time of his sale to appellee, but was ordered to be sold at administrator's sale. Wickson had executed his bond for title, and it is claimed that to save himself from a demand for damages, and to fulfill the stipulations of his bond, he became the purchaser. If his sale to appellee was *bona fide* for a consideration paid, then it was clearly Wickson's right and duty to do so, and his purchase enured to

the benefit of his vendee, who took the same free of all claims or demands which had or might arise against the vendor. It is not claimed that at the time of the sale from Wickson to appellee in 1866, there was any judgment lien outstanding against the property of the former, to prevent him from making sale of his interest in the land in controversy; and if the sale was made in good faith, simple creditors have no power to question it.

But it is claimed by appellant that at the time of the pretended sale to appellee Wickson was largely in debt, and that the sale was made for the purpose of defrauding his creditors out of their just demands, and also that the appellee Smiley, with a full knowledge of that fraudulent intent, received the title bond without paying anything therefor, and with the sole object and purpose of aiding Wickson in defrauding his creditors, and that, therefore, his bond for title was without consideration, fraudulent, and void. These were questions of fact, to be determined by the jury under proper instructions from the court, and upon those facts a correct determination of this cause depends. In the charge of the court in regard to these questions, we have been unable to find the errors claimed by counsel for appellants. On the contrary, we think the law was clearly and fairly presented to the jury, by which their minds were directed to the most material facts proven. The jury, in finding a verdict for the defendant below, thereby decided that the sale by Wickson to appellee was a *bona fide* one, and vested in the vendee the equitable title to the land, free from the claims of the vendor's creditors. We are of the opinion that a review of the material facts of this case will clearly show the legality of that verdict.

In 1866, L. B. Wickson, supposing that he was the heir to a certain tract of land which would soon be partitioned off to him, sold the same to Henry Smiley, executing to him a bond in the sum of four thousand seven hundred dollars, for a complete title whenever the same should be set apart as his portion as heir. It is probable that, at the time, Wickson was

in debt, and it is in proof that he was then selling off his property as fast as he could; but these facts, independent of other circumstances, could hardly be considered evidences of fraud or a fraudulent purpose, and if they were, still there is no proof that Smiley had any knowledge of those facts, or was in any way connected with the fraudulent intent. The land was not partitioned to Wickson, but was sold at administrator's sale, in 1867, and Wickson became the purchaser, for the purpose, as he said before, at the time of, and after the sale, of enabling him to comply with his bond for title to Smiley; and when the administrator reported the sale to the probate court, for confirmation, Wickson, by himself and attorney, appeared and asked an order of the court that the title be made directly to Smiley, as he was the equitable owner. But this act of justice was prevented by the attorney of appellant, who persuaded the court to order the deed made to Wickson, for the purpose, as it would appear from his own declarations, of subjecting the land to the satisfaction of a judgment against Wickson. We think the probate court, upon a proper representation that Smiley was the equitable owner of the land, for whose benefit the purchase was made, should have ordered the deed to be executed directly to him.

It is, however, claimed that Smiley had paid no consideration for the land, and therefore had no such equities as could defeat appellant's title by virtue of an execution sale against Wickson. But we think it clearly proven that Smiley did pay a consideration for the land. The bond from Wickson to Smiley recites the fact that the sale was made in consideration of the sum of four thousand seven hundred dollars. And Thompson, while on the stand as appellant's witness, testified that Wickson had acknowledged to him the receipt of the purchase-money. He also proved that Smiley paid a part of the purchase-money at the administrator's sale. We are of the opinion that this testimony was legitimate, and especially when the acknowledgment was proven to have been made long before the administrator's sale, and before the appellant's claim

to any rights in the land could have had an inception. We think this testimony establishes beyond a reasonable doubt the *bona fide* character of the sale from Wickson to Smiley, and that the consideration had been paid; and if these are the facts of the case, then appellee has a good and indefeasible title, that cannot be affected by any sheriff's sale under execution against Wickson. There is no error in the judgment of the District Court, and it is affirmed.

Affirmed.