PITTSBURG STEEL COMPANY *v.* WOOD.

 Opinion delivered October 20, 1913.

1. CONTRACTS—CONSTRUCTION—QUESTION OF LAW.—In the absence of ambiguity, or fraud in its procurement, the construction of a contract is a matter of law for the court. (Page 542.)

2. CONTRACTS—INTENTION OF THE PARTIES.—The intention of the parties to a written contract should be derived from the whole instrument. (Page 542.)

3. CONTRACTS—TERMS—DUTY TO KNOW TERMS.—A party who executes a written contract is bound under the law to know its contents, and, in the absence of fraud or ambiguity, he can not excuse himself from its terms by saying he did not read it or know what it contained. (Page 542.)

Appeal from Union Circuit Court; *George W. Hays,* Judge; reversed.

*Marsh & Flenniken,* for appellant.

It was improper to submit the contract to the jury for interpretation, because it was susceptible of but one reasonable construction, and that construction is the natural meaning of the words used in it. There was no oral testimony that either explained, altered or varied it or that threw any light on its meaning in any way. Its construction was wholly a matter for the court. 20 Ark. 583; 67 Ark. 553; 75 Ark. 55; 9 Cyc. 591; 53 Ark. 156. If there is any conflict between the clauses, "Fencing 73 per cent off list, f. o. b. Memphis, Tenn.," and "All above f. o. b. Strong, Ark.," the first quoted stipulation would prevail because it is a particular clause relating to a particular thing, whereas the latter clause is general and must be controlled by the particular clause. 72 Ark. 630; 193 U. S. 551.

Appellee's excuse for not understanding the contract is not sound in law. He is not an ignorant man, though his testimony shows that he was careless. It was his duty to read the contract and inform himself of its contents. 34 Ark. 316; 91 U. S. 45; 9 Cyc. 391, § 5; *Id.* 392.

*R. G. Harper,* for appellee.

The words, "All above f. o. b. Strong, Ark.," would, to any merchant of average intelligence, be understood to mean *everything above,* including all the goods that he had purchased; and since it was evident that the order on its face was uncertain and indefinite, it was proper for the court to admit oral testimony. Where the provisions of a contract are apparently conflicting, it is per-

missible to show the circumstances surrounding the transaction and the conduct of the parties under the contract. 52 Ark. 65; *Id.* 95; *Id.* 94; 46 Ark. 131; 75 Ark. 58. The court properly submitted the issues to the jury.

KIRBY, J. Appellant company sued W. S. Wood in the justice court to recover a balance of $39.86, claimed to be due on some merchandise shipped by it from Memphis to him at Strong, Arkansas, consisting of fencing, wire, nails and staples. On appeal to the circuit court, judgment was rendered in favor of Wood, from which judgment appellant brings this appeal. The amount sued for was the exact amount of the freight charges from Memphis, Tenn., the point of shipment, to the point of destination, Strong, Arkansas. Appellant claims the fencing was sold to him at an agreed price, f. o. b. Memphis, Tenn., and the wire nails and staples at a price f. o. b. Strong; appellee insisting that the entire bill of goods was to be sold f. o. b. Strong, for the agreed price. The written order, signed by appellee, expressing the terms of the contract, was read in evidence and is as follows:

## PITTSBURG STEEL COMPANY
### Pittsburg, Pa.

Ship to W. S. Wood at Strong, Ark.

Invoice to same at same.

When ship, earliest convenience.

This order subject to approval of Pittsburgh Steel Company and is payable only by current funds in Pittsburgh, New York or Chicago. All agreements contingent upon strikes, accidents and other causes beyond the control of the seller.

| FENCES, GATES, TOOLS, ETC. | | | | | | | BARBED WIRE, NAILS, STAPLES, ETC. | | |
|---|---|---|---|---|---|---|---|---|---|
| 40 rod rolls | 20 rod rolls | 10 rod rolls | Total rods | Style No. | Distance between stays | Kind of Fence | 50-80 rod spools 4pt. galv. P. P. Hog per spool | 2 | 32 |
| | | | | | | | 60-80 rod spools 2pt. galv. Star cattle per spool | 1 | 66 |
| | | 25 | 250 | 5819 | 6″ | Spec. P.& G. | 2-40d common @ barrel | 2 | 26 |
| | 24 | | 480 | 328 | 6″ | Reg. | 3-30d common. | | |
| | 45 | | 900 | 267 | 6″ | " | 4-20d " | | |
| | | 25 | 500 | 267 | 12″ | Reg. | 10-10d " | | |
| | | | | | | | 16- 8d " | | |
| | | | | | | | 50- 6d " | | |
| | | | | | | | 2- 3d " | | |
| | | | | | | | 1- 8d fine. | | |
| | | | | | | | 1- 8d casing. | | |
| | | | | | | | 6 Kegs 1 1-8 pol. staples | 2 | 26 |
| | | | | | | | Smooth wire @ base 400 No. 12 galv. smooth in 1-lb bundles, 2.51. | 2 | 06 |
| | | | | | | | 400 No. 12 galv. smooth, 50-lb. bundles, .05 per bundle extra 1000 lb.; No. 14 galv. smooth, 2.71. | | |
| | | | | | | | 1000 lbs. No. 14 galv. smooth in half catch wt. bundles .05 per bundle extra. | | |

Terms due net 5-1-'11 subject to a discount of 2% for cash if paid before 3-10-1911. Interest at the rate of 6% per annum allowed for anticipated payment from date of payment to be made by note upon Settlement to March 1, 1911. receipt of invoice. These discounts apply from list. Aug. 1, 1907.

No agreements except those stated on order will be recognized by this Company.

Fencing 73 per cent off list, F. O. B. Memphis, Tenn.

Gates and stretchers .... per cent off list, F. O. B.

Splicers and fence tools .... per cent off list, F. O. B.

Terms of payment.

Salesman, N. W. Smith.

All above F. O. B. Strong, Ark.

Terms of payment 60 days net.

Two per cent off ten days from date of invoice.

W. S. Wood, Buyer.

The salesman testified that appellee executed the contract and that there was no agreement that the entire car was to be delivered at Strong and that Mr. Wood did not tell him he wouldn't buy it unless it was sold f. o. b. Strong. Appellee denied owing the account, stated that he did not agree to pay the freight on any part of the merchandise purchased, and that it was his understanding that it was all to be delivered f. o. b. Strong; just like it reads above his signature, "All above goods, f. o. b. Strong." That when he signed the order he glanced up and noticed above the place for the signature, "All above goods f. o. b. Strong," and that if he had not understood that the goods were to be delivered he would not have signed the order. He admitted that he signed the order; that he did not notice the line, "Fencing 73 per cent off, f. o. b. Memphis, Tenn." That he did not always read every line of an order, and having seen the "f. o. b. Strong," supposed that it stated the terms and that he kept a duplicate of the order, which was introduced in evidence. That the order was made out in his store and handed to him right away, and that he filed it away and did not think any more about it until the question came up about the freight when he looked it up and noticed that it did have some stuff on the left-hand column, marked f. o. b. Memphis; that that was the first time he ever knew the order had been taken that way. One of the clerks in his store testified that he heard part of the conversation when the trade was made and heard Mr. Wood tell the salesman at the time the order was executed that he wouldn't buy the wire unless it was delivered at Strong. The salesman stated that the words, "All above goods f. o. b. Strong," mean only the items on the right-hand side of the double column of the order. That the left side specified the terms of payment.

The court refused to instruct the jury to find for the plaintiff and instructed them that if they should find from a preponderance of the testimony that the contract provided that a certain part of the bill of goods was to be delivered f. o. b. Strong, and that another part was sold f. o. b. Memphis, that they would find for the plaintiff,

and that if they should find under the terms of the contract all the property was to be delivered f. o. b. cars at Strong, they would find for the defendant.

The written order executed by appellant expressed the terms of the contract and its construction was a question for the court, there being no ambiguity arising from it and no fraud claimed to have been practiced in its procurement. 9 Cyc. 591; *Estes* v. *Booth*, 20 Ark. 583; *Arkansas Fire Insurance Co.* v. *Wilson*, 67 Ark. 553; *Dugan* v. *Kelly*, 75 Ark. 55.

The intent of the parties to a written contract should be derived from the whole instrument. *Kelly* v. *Dooling*, 23 Ark. 582; *Railway* v. *Williams*, 53 Ark. 58; *Vaugine* v. *Taylor*, 18 Ark. 65.

Appellant does not contend that the contract as executed has been changed, but only says that he did not in fact examine it sufficiently and closely to discover the provision that the fencing was priced f. o. b. Memphis. He executed the order, and, no fraud having been practiced upon him in its procurement and there being no ambiguity in its terms, he can not excuse himself from his liability thereon by saying that he did not read it all and that if he had understood that it read as it appears to read that he would not have signed it. He is bound, under the law, to know the contents of a paper signed by him, and he can not excuse himself by saying he did not read it or know what it contained. *Upton* v. *Tribilcock*, 91 U. S. 45; 9 Cyc. 391; *Stewart* v. *Fleming*, 105 Ark. 37.

The terms of the contract are plain and unambiguous and the court erred in not instructing a verdict for the appellant.

The judgment is reversed and judgment will be entered here for the amount sued for. It is so ordered.