GAMMON et al. v. HUMPHREYS–MEXIA OIL CO. et al. (No. 8796.)*

(Court of Civil Appeals of Texas. Dallas. July 1, 1922. Rehearing Denied Oct. 14, 1922.)

1. **Mines and minerals ⚮⟾55(8) — Intent of grantor to convey minerals held question for court.**

In trespass to try title, where a deed from the alleged common source of title was free from ambiguity, and there was no proof of fraud, accident, or mistake, the intention of the grantor as to conveying the minerals in the land by the instrument should not have been made an issue of fact for the jury, but the instrument should have been construed by the court in the light of its own terms.

2. **Mines and minerals ⚮⟾55(7)—Deed held to convey minerals reserved under former deed.**

Where a landowner conveyed land by warranty deed reserving the minerals, and subsequently conveyed to a third party the vendor's lien notes given by the grantee in the first deed, together with his lien, and all right, title, interest, estate, claim, and demand, both legal and equitable, that the grantor had in and to the land and every part thereof, such deed included the minerals reserved under the first deed, in view of Vernon's Sayles' Ann. Civ. St. 1914, art. 1106.

3. **Mines and minerals ⚮⟾55(2)—Conveyance reserving vendor's lien held not a severance of minerals from surface.**

Where a deed reserving the minerals expressly reserved a vendor's lien to secure vendor's lien notes in payment of the land, such deed was an executory contract, and the superior title remaining in grantee until his con-

*Application of Humphreys-Mexia Company, and Shear Company, for writ of error granted November 29, 1922.

veyance became executed by payment of the notes, and there was no technical severance of the minerals from the surface by the reservation, in view of Vernon's Sayles' Ann. Civ. St. 1914, art. 1106.

**4. Mines and minerals ☞55(7) — Estate in surface and in minerals held to merge in grantee.** \

Where a landowner conveyed certain land, reserving minerals and retaining a vendor's lien, and subsequently conveyed the vendor's lien notes with all his estate in the land to a third party, when such third party acquired title to the land from the grantee under the first deed, the estate in the surface and the estate in the minerals were merged in such third party if a severance had in fact been accomplished, by the first deed, so that thereafter only one conveyance was necessary to vest title in a purchaser from such third party.

**5. Mines and minerals ☞55(1)—Recitals as to mineral reservation held ineffectual as exception or reservation.**

Where the estates in the surface and the minerals were merged in a grantee under two deeds, recitals that the conveyance was subject to the mineral rights under a former deed *held* insufficient to constitute either an exception or a reservation.

**6. Deeds ☞137—Exceptions must be in favor of grantor, and not of stranger.**

An exception in a deed to be effective must be in favor of a grantor and not in favor of a stranger.

**7. Vendor and purchaser ☞239(1)—Purchasers without notice of undisclosed intention of grantor held innocent purchasers.**

Where a deed conveyed certain vendor's lien notes, together with all the grantor's estate in the land, and subsequent purchasers had no notice of the undisclosed intention of grantor to deed only the notes and not mineral rights, such purchasers, having in good faith acquired title for value without notice, were innocent purchasers.

Appeal from District Court, Limestone County; A. M. Blackmon, Judge.

Trespass to try title by J. L. Gammon and others against Humphreys-Mexia Oil Company and others. Judgment for defendants, and plaintiffs appeal. Reversed and rendered.

J. L. Gammon, of Waxahachie, Callicutt & Johnson, of Corsicana, Templeton, Beall, Williams & Worsham, and A. S. Rollins, all of Dallas, and J. D. Williamson, of Waco, for appellants.

C. S. & J. E. Bradley, of Groesbeck, and W. J. Bryant, of Wortham, for appellees.

VAUGHAN, J. This suit was filed in the district court of Limestone county by J. L. Gammon, Jno. F. Wyatt, R. J. Colburn, M. B. Ray, and A. H. Paillett against Hum-

phreys-Mexia Oil Company, a corporation, C. A. Kennedy, H. W. Freeman, W. D. Freeman, H. C. Freeman, J. E. Winans, J. W. McLendon, Jack Womack, Max Guteman, and the Shear Company, in the form of trespass to try title to part of the Pedro Varella 11-league grant situated about 1½ miles west of the town of Mexia and properly described by field notes in said petition.

Appellants, who were plaintiffs below, in their petition also specially pleaded the 3, 5, and 10 years' statutes of limitation.

The Humphreys-Mexia Oil Company answered by general denial and plea of not guilty, and by disclaimer disclaiming any interest in the surface of the land sued for by appellants, and also pleaded that C. A. Kennedy was the common source of title; that it acquired its title to the minerals through C. A. Kennedy; that it was a purchaser in good faith; and that it made valuable improvements in good faith; and specially pleaded its chain of title.

C. A. Kennedy and the other appellees, except the Shear Company, answered, setting up the same pleas as their codefendant, Humphreys-Mexia Oil Company. The Shear Company answered by general demurrer and plea of not guilty, and disclaimed any interest in the surface of the land. It also alleged that C. A. Kennedy was the common source of title, and that C. A. Kennedy by deed to F. M. Sanches created two separate estates, having in said deed reserved the minerals, and that thereafter he conveyed the minerals to the Rotan Grocery Company, and that the Shear Company had succeeded to all of the rights of the Rotan Grocery Company, and had not conveyed or transferred any of said minerals.

By first supplemental petition appellants specially denied that C. A. Kennedy and those claiming under him were purchasers in good faith, and specially set up that on the 29th day of January, 1900, C. A. Kennedy executed to the Rotan Grocery Company, a transfer of the three vendor's lien notes executed by Sanches to Kennedy and described in the deed to the land involved, executed by Kennedy to Sanches.

The appellees, other than the Shear Company, filed a supplemental answer alleging in effect that the deed and transfer set up in appellants' first supplemental petition was intended as a transfer of vendor's lien notes, and that C. A. Kennedy did not contract or agree to sell or convey any interest in or lien upon said land except the vendor's lien securing the payment of said notes; that there was no consideration paid for the execution of said transfer, and that Kennedy did not intend to convey, and the Rotan Grocery Company did not intend or expect to receive or procure, any interest in and to said land except the lien securing said notes, and that such understanding and agreement

was omitted and left out of said instrument by accident, mistake, or fraud.

The Shear Company filed supplemental answer setting up the 2, 4, and 10 years' statutes of limitation as against the matters pleaded by the other appellees in their supplemental answer.

Appellants filed a second supplemental petition in which they pleaded that they were purchasers for value without notice of any of the matters and things alleged by the appellees other than the Shear Company, with respect to failure of consideration, accident, fraud, mistake, etc., and specially pleaded the statutes of 4 years' limitation as to any actions to reform or correct the transfer from Kennedy to Rotan Grocery Company.

Appellants filed a third supplemental petition replying to the answer of the Shear Company, wherein they pleaded that the Shear Company was estopped to assert any right, title, or interest in and to the property because its predecessor, the Rotan Grocery Company, on the 16th day of September, 1918, executed and delivered to Mrs. Jasper K. Smith a release, which was duly recorded in the deed records of Limestone county prior to the purchase by appellants, wherein it declared that it had no other or further claim against said land, or any part thereof, and that appellants were purchasers for value without notice of any right, title, claim, or interest asserted by the Shear Company

Appellees, other than the Shear Company, filed what they termed their replication to all of the supplemental pleadings of appellants and the Shear Company, specially denying the matters set up in the supplemental pleadings of appellants and the Shear Company

On the trial of the case the following facts were established: That on the 20th day of September, 1899, C. A. Kennedy executed and delivered to F. M. Sanches a warranty deed conveying the land in question to Sanches in consideration of 5 promissory notes of $300 each, fully described in said deed, in which deed, following the description of the property conveyed and preceding the habendum and warranty clauses, this language is used:

"But it is expressly agreed and understood that C. A. Kennedy reserves all the oil and minerals in said land, and he and his heirs, assigns and legal representatives shall have the right at all times to enter on the above-described lands and to bore wells and make excavations and remove all oils and minerals found thereon. * * * To have and to hold the above-described premises, together with all and singular the rights and appurtenances thereto in any wise belonging, subject to above reservations, unto the said F. M. Sanches, his heirs and assigns forever."

That on the 29th day of January, 1900, C. A. Kennedy executed and delivered to the Rotan Grocery Company a deed and transfer substantially as follows:

"The State of Texas, County of Limestone.

"Whereas, heretofore, to wit, on the 30th day of September, A. D. 1899, F. M. Sanches, made, executed, and delivered to C. A. Kenneday his five several promissory notes payable to the order of said C. A. Kenneday as follows: Dated September 30, 1899, due November 1st, respectively, 1900, 1901, 1902, 1903, and 1904, for $300 each, bearing 10 per cent. interest per annum from January 1, 1900, with interest on each of said notes at the rate of 10 per cent. per annum and providing for the payment of 10 per cent. additional as attorney's fees upon the contingency therein specified; and whereas, said notes were given in payment of the purchase money for the following described parcel of land, situated in Limestone county, Tex., viz.: Being two tracts or parcels of land out of the Pedro Varilla 11-league grant this day sold to F. M. Sanches on September 30th, 1899; and whereas, a vendor's lien is reserved and retained on said land to secure the payment of said notes and each thereof:

"Now, therefore, know all men by these presents, that I, the said C. A. Kenneday, for a valuable consideration, have assigned, transferred, and delivered said 5 notes to the Rotan Grocery Company, and in consideration of the premises and the sum of $1 to me in hand paid, the receipt of which is hereby acknowledged, have bargained, sold and conveyed, assigned and set over to the said the Rotan Grocery Company my lien on said land and have and do hereby bargain, sell, and quitclaim all of my right, title, interest, estate, claim, and demand, both legal and equitable, in and to said land and every part thereof, together with all and singular the hereditaments and appurtenances thereunto appertaining, to have and to hold unto the said the Rotan Grocery Company, successors and assigns and his heirs and assigns forever."

This instrument was filed for record in the office of the county clerk of Limestone county February 5, 1900, at 8:30 o'clock a. m.

On the 24th day of February, 1903, F. M. Sanches and wife executed and delivered to the Rotan Grocery Company a warranty deed conveying to said company, in consideration of the cancellation of the notes described in the deed from Kennedy to Sanches, the land in controversy. Following the description of the land and preceding the habendum and warranty clauses, this statement was inserted:

"The land herein conveyed being the same land deeded to F. M. Sanches by C. A. Kennedy by deed recorded in volume 36, p. 547, Deed Records Limestone county, Tex., and this conveyance is subject to the mineral rights reserved in said conveyance."

On the 30th day of March, 1905, the Rotan Grocery Company executed and delivered to Mrs. Jasper K. Smith a warranty deed conveying the land in question in consideration of $250 cash and two notes of $250 each, in which deed, preceding the habendum and warranty clauses, this recital is contained:

."This land herein conveyed being the same land deeded to F. M. Sanches by C. A. Kennedy by deed recorded in volume 36, p. 547, Deed Records of Limestone county, Tex., and afterwards conveyed to the Rotan Grocery Company by said F. M. Sanches by deed dated February 24, 1903, recorded in deed records of Limestone county, and is subject to the mineral rights reserved in said conveyance."

On the 4th day of September, 1908, the Rotan ·Grocery Company executed and delivered to Mrs. Jasper K. Smith a release of vendor's lien, which release, after describing the notes, recites:

"Whereas the said Mrs. Jasper K. Smith has paid in full said two notes described therein, but they having been misplaced or lost and cannot be found, and the said Rotan Grocery Company has no other or further claim against said land or any part thereof: Now, therefore, in consideration of the payment in full for the said lands described in said deed, to which and the record thereof reference is here made for a full description of the said lands and notes * * * does hereby release to the said Mrs. Smith all liens it has upon said lands by said notes or otherwise, * * * to have and to hold the said land to her, the said Mrs. Smith, her heirs and assigns forever this September 4, A. D. 1908."

This instrument was filed for record on the 17th day of· November, A. D. 1908, at 8 o'clock a. m. in the office of the county clerk of Limestone county, Tex., and duly recorded on the same day at 10 o'clock a. m.

Appellants offered in evidence complete chain of title from Mrs. Jasper K. Smith down to themselves to the land involved.

C. A. Kennedy testified:

"That he is the C. A. Kennedy who executed the deed to F. M. Sanches; that this deed was executed the 30th day of September, 1899, and that the notes were turned over to Rotan Grocery Company pretty soon after he received them from Sanches. Some three or four months afterwards the Rotan Grocery Company brought him a transfer to sign—along about the latter part of January, 1900; that in this transaction they brought him a transfer to sign which was on a printed form, and he understood it was just transferring the title of the notes; that at that time he was able to read and write, and that no one prevented him from reading the document; that Captain Gibson brought it to him and said: 'This is a transfer of those notes'; that the transaction took place more than 20 years before the time he was testifying, and that it is a fact that his attorney, Thomas J. Gibson, prepared the transfer; that Captain Gibson was representing him and· knew about the trade, and had drawn the deed from Kennedy to Sanches; that he did not pay any taxes on the minerals on this land after the deed was made to Sanches, and has never rendered any minerals or any property in this 86 acres for taxes; that he had nothing to do with the deed from Rotan Grocery Company to Mrs. Smith, and nothing to do with the deed from Sanches to the Rotan Grocery Company; that he did not intend to convey anything but these notes; that the only thing he understood was that it was to convey title to the notes. He did not know that the document contained any of the provisions of conveyance, and the first time he knew that it was claimed that the transfer was a conveyance of anything other than the notes and the lien securing the notes was when he was trying to sell some of the leases some time during the year 1920."

The court submitted the case to the jury on one issue, and preceding the submission of the issue, charged the jury—

"that the burden of the proof is upon the plaintiffs in this case to establish their cause of action by a preponderance of the testimony. The burden of proof is upon that party,· plaintiff or defendant, in this case, asserting the affirmative of the issues of fact submitted."

The issue submitted is:

"Was it the intention of C. A. Kennedy, grantor in the instrument of date January 29, 1900, which instrument has been introduced in evidence before you, to therein and thereby convey to the Rotan Grocery Company, grantee in said instrument, the title to the minerals in and under the land therein described? This question you will answer 'Yes' or 'No.'"

The jury returned answer to this question in the negative. On this verdict the court entered judgment for appellees.

Notwithstanding the many assignments presented by the record, all relating to and being based upon the legal effect of and the proceedings had in the court below on the deed of date September 30, 1899, from C. A. Kennedy to F. M. Sanches, `and the transfer of vendor's lien notes and lien and conveyance of title by instrument of date January 29, 1900, by C. A. Kennedy to Rotan Grocery Company, and the deed of date March 30, 1905, from the Rotan Grocery Company to Mrs. Jasper K. Smith conveying the land involved, it will not be necessary to discuss said assignments seriatim, a general discussion being sufficient to dispose of this appeal.

The disposition of the case in the court below was made to depend entirely upon the intention of C. A. Kennedy, grantor in the instrument of date January 29, 1900, to wit, whether or not in the execution of said instrument it was his intention to convey to the Rotan Grocery Company, grantee therein, the title to the minerals in and under the lands therein described, being the lands involved on this appeal. The language employed in said instrument is clear in expressing the intention and explicit in disclosing the purpose to be accomplished by the execution of same, to wit, the transfer and assignment by said ,C. A. Kennedy for a valuable consideration of the five notes and vendor's lien existing to secure the payment of same as described and referred to in said instrument; and, in addition thereto, to con-

vey all of the title and right of property owned by the said Kennedy in and to said land to the Rotan Grocery company. Kennedy knew of his rights, not only as the owner of the notes and lien existing to secure the payment of same, transferred and assigned by said instrument, but of his rights of property existing in the minerals, etc., on and under the surface of said land by virtue of the reservation made by him in the deed executed to Sanches on the 30th day of September, 1899.

[1] The deed and transfer executed by Kennedy to Rotan Grocery Company, being free from ambiguity, and there being no proof to sustain appellees' allegations that same was executed through fraud, accident, or mistake, the intention of Kennedy to convey or not to convey the minerals by such instrument should not have been made an issue of fact to be determined by the jury trying the case. Said instrument should have been construed by the court in the light of its own terms, and it was error for the court to submit to the jury the construction of said instrument. Fellows v. Dorsey, 171 Mo. App. 289, 157 S. W. 995; Penn v. Hare (Tex. Civ. App.) 223 S. W. 527; Crescent Stave Co. v. Brown, 181 Ky. 787, 205 S. W. 937; Mounty v. Neighbors, 195 Mo. App. 21, 189 S. W. 614; Pittsburg Steel Co. v. Wood, 109 Ark. 537, 160 S. W. 519.

[2, 3] The instrument of date January 29, 1900, conveyed to the grantee therein, the Rotan Grocery Company, all the right, title, interest, estate, claim, and demand, both legal and equitable, that the said Kennedy had in and to said land, including the minerals reserved in his deed to Sanches. Article 1106, Ver. Say. Tex. Civ. Stats. 1914; Ragsdale v. Mays, 65 Tex. 255; Smith v. Crosby, 86 Tex. 15, 23 S. W. 10, 40 Am. St. Rep. 818. The deed from Kennedy to Sanches expressly reserved the vendor's lien to secure the payment of the five vendor's lien notes executed in payment of the consideration contracted to be paid for said land described in said instrument; therefore, said deed was an executory contract, and the superior title to the land described therein remained in Kennedy until his conveyance became executed by the payment of said notes. The minerals having been reserved in said deed by proper and sufficient language, the title thereto never passed from Kennedy by the deed but continued to remain in him so that under the doctrine of merger the retention of the superior title to the land, which included the minerals as well as the surface, precluded the technical severance of the minerals from the surface attempted by said reservation. Therefore, on the execution of the deed and transfer dated January 29, 1900, by Kennedy to Rotan Grocery Company, Kennedy conveyed the superior title and all of his right, title, interest, estate, claim, and demand, both legal and equi-

table, which certainly divested him of all title to the minerals theretofore reserved in his deed of conveyance to Sanches and vested same in the Rotan Grocery Company. Donnell et al. v. Otts (Tex. Civ. App.) 230 S. W. 864; Luse v. Penn (Tex. Civ. App.) 220 S. W. 303; Taylor et al. v. County School Trustees, Eastland County (Tex. Civ. App.) 229 S. W. 670; article 1106, Ver. Say. Tex. Civ. Stats. 1914.

[4] While we do not believe there is any reasonable doubt as to the soundness of the proposition above announced, to wit, that no severance of the minerals was accomplished by the reservation in the deed from Kennedy to Sanches, conceding that by such reservation such technical severance was accomplished, yet, the Rotan Grocery Company, having acquired, through the instrument executed by C. A. Kennedy, title to all the minerals reserved in his deed to Sanches, and thereafter, on the 24th day of February, 1903, having acquired from F. M. Sanches and wife, by proper deed of conveyance, title to said tract of land, the two estates became merged in the Rotan Grocery Company as owner. Thus, the titles to said estates were blended in Rotan Grocery Company so as to require only one conveyance to vest title thereto in purchaser. Watts v. Bruce, 31 Tex. Civ. App. 347, 72 S. W. 258, Ackerman v. Smiley, 37 Tex. 216.

[5] The deed and transfer executed by Kennedy to Rotan Grocery Company divested him of all right, title, interest, claim, estate, and demand in and to the land in controversy, so that the recitals in the deed from Sanches to the Rotan Grocery Company and in the deed from Rotan Grocery Company to Mrs. Jasper K. Smith, did not create or vest any rights in him to the minerals theretofore reserved by him in his deed to Sanches, and the reference to the mineral reservations contained in said deeds are insufficient to constitute either an exception or reservation, and the legal effect of said recitals in the deed from Rotan Grocery Company to Mrs. Jasper K. Smith was to convey the surface of the land with warranty and the minerals without a covenant of warranty.

[6] C. A. Kennedy was a stranger to the transaction involved in the execution of the deed by Sanches to Rotan Grocery Company, and in the deed executed by Rotan Grocery Company to Mrs. Jasper K. Smith. Therefore, the reference to the reservation of mineral rights made by Kennedy in his deed to Sanches, which appeared in both of the deeds above mentioned, did not constitute either an exception or reservation so as to create or vest in Kennedy or his grantees any right, title, or interest, said Kennedy not being a party to the deed, and such exception, to be effective, must be in favor of a grantor and not in favor of a stranger. Therefore, if treated as an exception, said

clause did not vest any right in Kennedy, and certainly not in the Rotan Grocery Company, as it is apparent from the language used that it was not the intention of the Rotan Grocery Company to reserve any interest whatsoever in the property conveyed by the deed to Mrs. Jasper K. Smith. Am. & Eng. Enc. of Law (2d Ed.) vol. 6, 515; Allen v. Henson, 186 Ky. 201, 217 S. W 121; Burchard v. Walther, 58 Neb. 539, 78 N. W. 1061; Bartell v. Kelsey (Tex. Civ. App.) 59 S. W. 631.

[7] Appellants J. L. Gammon, Jno. F. Wyatt, R. J. Colburn, M. B. Ray, and A. H. Paillett did not have any notice of the undisclosed intention, if any, on the part of C. A. Kennedy at the time of the execution of the transfer and deed dated January 29, 1900, and they, having in good faith acquired the title to the property involved for value, and without notice of such undisclosed defect in said instrument, were innocent purchasers; and, if such undisclosed intention as contended by appellees in fact did exist, same could not disturb the title so acquired by said appellants.

We do not deem it necessary to prolong this opinion by discussing the other propositions, as what we have said will necessarily require that the judgment of the court below be reversed and here rendered for appellants J. L. Gammon, Jno. F. Wyatt, R. J. Colburn, M. B. Ray, and A. H. Paillett, against appellees and appellant the Shear Company, for the fee to all of said lands sued for, including the surface and minerals.

Reversed and rendered.