STRAUS v. BROOKS et al.
No. 2017.

Court of Civil Appeals of Texas. Waco.
March 9, 1939.

Rehearing Denied March 30, 1939.

Touchstone, Wight, Gormley, Strasburger & Price and Geo. T. Burgess, all of Dallas, for appellant.

Cedric G. Hamlin and George T. Lee, both of Dallas, for appellees.

GEORGE, Justice.

Lelia Brooks and husband, Ross Brooks, filed suit against Eugene Straus, trading as Eugene Straus & Company, and J. B. Quinn, trustee, to set aside deed of trust lien on Caddo Street property on the

ground that same was homestead at the time of attempted creation of lien and at the time of each renewal thereof. United Construction Company intervened, asserting ownership of first lien by reason of certain paving ordinances and two mechanic's lien contracts. Straus answered, averring paramount lien, and that Lelia Brooks and Ross Brooks were estopped to assert an invalidity in his lien, and asked judgment on note and foreclosure of lien. The case was tried before the court and jury and judgment was rendered on the latter's answers to special issues, that Straus recover of Lelia and Ross Brooks $2,500.08, together with interest thereon, and foreclosure of his deed of trust lien only on the interest (one-half undivided interest) conveyed by Alex Rutlin to Lelia Brooks, less a life estate in Lelia Brooks; that United Construction Company recover its debt and attorney's fees of Lelia Brooks and have foreclosure of its lien against all of the property but only as a first lien against the interest owned by Lelia Brooks prior to the Alex Rutlin deed; hence this appeal by Straus.

The pertinent findings of the jury are: (1) that the property at 2400 Caddo Street was, on December 21, 1925, being used by Lelia Brooks and her then husband, Alex Rutlin, for the purposes of a home; (2) that Lelia and Alex Rutlin did not, at and just prior to December 21, 1925, represent to S. Topletz by conduct and statements that the Caddo Street property was not being used for the purposes of a home; (3) that Lelia and Alex Rutlin did not, at and just prior to December 31, 1928, represent to Eugene Straus, or his attorney, Fred Hancock, that the Caddo Street property was not being used for the purposes of a home on December 21, 1925; and (4) that the consideration for the transfer for Alex Rutlin's one-half interest of the Caddo Street property to Lelia Rutlin in the deed of January 1, 1930, did include the assumption of the Eugene Straus note of December 31, 1928.

The Caddo Street property was conveyed to Alex and Lelia Rutlin on December 4, 1914, by Gard, and the time payments were evidenced by their community obligations. S. J. Reynolds and Belle Reynolds, father and mother of Lelia Rutlin, purchased the Flora Street property in 1898, and S. J. Reynolds continued to occupy and claim the same as his home until after December 21, 1925. Belle Reynolds died on June 26, 1921, almost two years after the sale of her interest in the property for taxes to J. H. Luna. Lelia Rutlin and sister, Carrie Mae Latimer, on September 19, 1921, acquired by quit-claim deed the interest of their mother, Belle Reynolds, in the Flora Street property procured by J. H. Luna at the tax sale.

Lelia Rutlin and Alex Rutlin, on December 21, 1925, executed deed of trust on the Caddo Street property to secure payment of $1,500 note to H. S. Lawson, due three years after date, given in part in evidence and renewal of $95.35 taxes and $311 owed to Cowser Lumber Company. The deed of trust recited that the property was not homestead and that they disclaimed and renounced all such claims. Alex Rutlin, on December 18, 1925, made under oath designation of the Flora Street property as homestead; and Alex and Lelia Rutlin, on December 22nd, executed affidavit to the effect that the Caddo Street property was not then and had never been used or occupied by them as a homestead; that they had no present intention of using it for homestead purposes, and that the affidavit was made for the purpose of assuring against homestead claims and of inducing H. S. Lawson to make the loan. The note and lien were on the same day transferred to S. Topletz. Neither the homestead designation nor the affidavit was placed of record. The note and lien were transferred to Eugene Straus by instrument dated December 31, 1928, and Lelia Rutlin Brooks and her then husband, Alex Rutlin, on January 2, 1929, executed deed of trust in extension of all existing liens to secure payment of their note in the sum of $1,773, given in renewal of $1,500 note, accrued interest and $190.31 delinquent taxes on property paid by Straus at the time. That deed of trust contained a recital to the effect that Alex and Lelia Rutlin declared that the property formed no part of any property owned, used, or claimed by them as exempted from forced sale under the laws of Texas, and that they disclaimed and renounced all and every claim thereto under such law. Alex and Lelia Rutlin were divorced on August 17, 1929, and the Caddo Street property was decreed to be community and set aside to Lelia Rutlin and the minor child so long as it was used as a homestead by her. And thereafter, on January 2, 1930, Alex Rutlin by deed conveyed to Lelia Rutlin all of his undivided one-half interest in the Caddo Street property in consideration, among other things, of her assumption of

the $1,773 Straus' indebtedness and reserved therein vendor's lien, which deed was filed for record March 4, 1930. Lelia Rutlin, widow, on February 20, 1930, executed the two paving contracts held by United Construction Company, which were filed for record on February 26, 1930. Lelia Brooks and husband, Ross Brooks, on January 19, 1932, executed deed of trust to J. B. Quinn, trustee, continuing all liens in force to secure payment of note in the sum of $1,900, given in renewal of the $1,773 note. The minor child of the Rutlins reached his majority prior to the trial. All of the parties admit that the payment of the items of $311, $95.35, and $190.31 was secured by valid first liens on the Caddo Street property, and according to the agreement of all parties, shown at page 234A in Statement of Facts, sums aggregating $510 were paid after last renewal, the last thereof in the sum of $85 being made on April 12, 1934.

Straus testified that he purchased the note and lien from M. Saffir; that he depended on Mr. Hancock, his attorney, in the matter; that he bought the note on Hancock's statement that the title was all right; that he had no knowledge of the transaction or of the parties except as was found out from the papers; that he did not know the Rutlins on December 21, 1925, nor did he know where they lived then; that his money did not pass until Hancock had approved everything. Straus admitted, through his counsel, that the aggregate amount of payments made him after the renewal of January 19, 1932, totalled $510, and that he applied $112.55 on principal and the balance on interest. Fred Hancock testified that he represented Eugene Straus in the purchase of the Alex and Lelia Rutlin note and lien; that the note and deed of trust, affidavit of Alex and Lelia Rutlin, and homestead designation of Alex Rutlin were handed to him prior to closing the matter; that he read them; that he had no independent knowledge or information apart from those papers that the representations and statements in them were not true; that he relied upon the representations and statements made in those written instruments and advised Straus to pay out his money and close the transaction; that Rutlin and wife appeared before him and executed and acknowledged the deed of trust; that on all these papers the matter was closed and Straus paid out his money and took up the note. Alex Rutlin testified that "he (Lawson) took me

to S. Topletz and explained to him about the place and how it was; that we lived there and said, 'He cannot move out,' and Topletz says, 'We will fix that up all right.' Lawson wanted me to execute the affidavit saying we were living on Flora Street so he could get the money, and the other affidavit that we did not live on Caddo Street was signed in order to get the money, we had to say that we had moved out. We never moved out. Lawson and Topletz knew we never moved out. Mr. Straus took it over to me and I renewed the note." Lelia Brooks testified that she did not talk about the loan at the time she executed the renewal note for Mr. Straus; that she knew nothing about it not being all right; that she thought all the time it was all right; that she paid Topletz interest on the place for three years; that she paid the interest until the last time the note was renewed, and then that she made it in monthly payments so that she could pay it out by the month; that she paid on the 1929 note every six months.

Appellant contends that the trial court erred (1) in refusing to give his peremptory instruction and in overruling his motion to enter judgment non obstante veredicto, because (a) the deed from Alex Rutlin to Lelia Rutlin estopped Lelia Brooks and Ross Brooks from asserting any invalidity in the lien, and (b) Lelia Brooks and husband were, under the uncontroverted testimony, estopped to assert any invalidity in the lien; (2) in holding that Straus had only a lien on a one-half interest in the property subject to a life estate in Lelia Brooks; and (3) in not awarding to appellant judgment establishing a first lien and foreclosing same upon the property in controversy for the amount remaining unpaid for improvements and taxes.

Alex Rutlin, on January 2, 1930, conveyed to Lelia Rutlin his undivided one-half interest in the property and expressly retained a lien on that one-half interest to secure the payment of the indebtedness due by them at that time to Straus, and Lelia Brooks and husband, Ross Brooks, are estopped from asserting any invalidity in the lien insofar as it covers the interest conveyed by the deed of Alex Rutlin, because she, by her assumption of such indebtedness, made same a part of the purchase price for said property. Etter v. Tuck, Tex.Civ.App., 101 S.W.2d 843;

Miller v. Standard Savings & Loan Ass'n, Tex.Civ.App., 88 S.W.2d 522; Anderson v. Casey-Swasey Co., 103 Tex. 466, 129 S.W. 349; Nesral Production Co. v. St. Louis B. & M. R. Co., Tex.Civ.App., 84 S.W.2d 805; McMullan v. San Antonio Joint Stock Land Bank, Tex.Civ.App., 78 S.W.2d 669; Rice-Stix Dry Goods Co. v. First National Bank of McGregor, Tex. Com.App., 231 S.W. 386.

■ The divorce decree did not purport to vest in Lelia Rutlin a life estate in Alex Rutlin's one-half interest in the Caddo Street property, but declared each to be the owner of an undivided one-half interest therein, and gave to Lelia Rutlin the right to the possession and use of the entire property only so long as used by her as a homestead. The right vested in her by that decree became merged in the title vested in her by the Alex Rutlin deed as is manifest by the language of the deed itself, surrounding facts and conduct of the parties. She took the title to and holds Alex Rutlin's one-half interest under such deed. A part of the consideration for the conveyance was the assumption of the Straus' debt and a reservation of a first lien on the entire one-half interest to secure payment of the Straus' indebtedness. Estes v. Estes, Tex.Com.App., 267 S.W. 709; Ackerman v. Smiley, 37 Tex. 211; Settegast v. Folley Bros. Dry Goods Co., 270 S.W. 1014; Diamond v. Rotan, 58 Tex.Civ. App. 263, 124 S.W. 196.

■ The deed from Alex Rutlin to Lelia Rutlin does not, under the hereinabove first cited authorities, estop Lelia Brooks and husband, Ross Brooks, from asserting any invalidity in the lien insofar as it covers the undivided one-half interest owned in the property by her prior to the delivery and acceptance of the Alex Rutlin deed, for the reason that the Straus' debt does not constitute any part of the purchase price of her previously owned undivided interest.

■ Inasmuch as the Caddo Street property was unquestionably the homestead of Alex and Lelia Rutlin at all times from its purchase by them on December 8, 1914 until their divorce on August 17, 1929, and was the homestead of Lelia and Ross Brooks in December 1931 and January 1932, the attempted liens thereon and renewals thereof covering all items involved except amount of Cowser Lumber Company's indebtedness and taxes paid were and are absolutely void. Art. 16, sec. 50, Constitution; Andrews v. Security National Bank of Wichita Falls, 121 Tex. 409, 50 S.W.2d 253, pars. 6 and 10; Inge v. Cain, 65 Tex. 75.

■■ Also, the open, exclusive and unambiguous possession and occupancy of the property by the Rutlins as their home were visible and tangible circumstances of such import as to apprise H. W. Lawson and S. Topletz of the homestead character of the property and thus deprive them of any basis for the contention that they had a right to rely on the statements of the affidavit. Texas Land & Loan Co. v. Blalock, 76 Tex. 85, 13 S.W. 12; Seidemann v. New Braunfels State Bank, Tex. Civ.App., 75 S.W.2d 167, par. 3; Gibraltar Savings & Bldg. Ass'n v. Harper, Tex. Civ.App., 41 S.W.2d 130. Therefore, the affidavit executed by Lelia and Alex Rutlin on December 22, 1925 was of no force and effect and did not estop them at that time from asserting invalidity of lien. Does the record disclose any facts that have transpired since that time that would give rise to the right in Straus to plead estoppel as against Lelia Brooks? Straus and his attorney, on January 2, 1929, knew that the Rutlins had in 1923 executed materialman's and mechanic's liens on the Caddo Street property in the manner provided by the Constitution and statutes to create a valid lien on a homestead and that the debt evidenced by the Lawson note was past due and unpaid and they were, in addition thereto, charged with notice of the fact that the property was being used by the Rutlins as a home. There is not any evidence in the record indicating that the Rutlins asked Straus to purchase the note or to make them a loan to take up such indebtedness; or that they knew of the contemplated purchase; or that Lelia Brooks knew of the execution and existence of the purported homestead designation; or that either Alex or Lelia Rutlin, on January 2, 1929, recalled execution or existence of affidavit of December 22, 1925; or that the Rutlins were given an opportunity to disclose the facts with reference to the execution of the attempted lien of December 21, 1925. The burden was on Straus to show that he was induced by the representations of the Rutlins to purchase the Lawson note and lien and that he had a right to rely on such representations. Hill v. Engel, Tex.Civ.App., 89 S.W.2d 219, pars. 3, 4, and 5.

The trial court impliedly found that the $311 paid to Cowser Lumber Company and the $190.31 and $95.35 paid as taxes had been repaid and rendered judgment on this finding, denying appellant Straus foreclosure of lien on the entire property for any amount thereof. The admitted and uncontroverted testimony conclusively establishes that the above mentioned indebtednesses aggregating $596.66 were secured by valid first liens on the entire property in controversy; that partial payments were made between December 21, 1925 and May 12, 1934 aggregating $1,218.83, and that $510 of this amount was made at various times between January 19, 1932 and May 12, 1934. Lelia Brooks insists that the payments made by her and Alex Rutlin aggregating $1,218.83 should have been applied first to the satisfaction of the items above mentioned aggregating $596.66. Straus insists that only $112.55 was paid on the principal, and that all other payments were made and applied by the parties to the satisfaction of interest. The testimony of Lelia Brooks shows that all payments made prior to the execution of the $1,900 note on January 19, 1932 were made as interest, and the record shows that such payments were accepted and appropriated by the then holders of such notes as interest. The $1,900 note was payable in monthly payments of $32.50 each. Straus admits that he applied $112.55 of the $510 paid to him after January 19, 1932 on the principal of the $1,900 note. The $1,900 note included the above mentioned items of indebtedness aggregating $596.66. It appears from the testimony and circumstances that the payment of $25 of April 1, 1932, and the payment of $7.50 of April 15, 1932, made up and was regarded by the parties as constituting the second payment of $32.50 on the $1,900 note, consisting of $15.70 interest and $16.80 principal. Through some error, the $7.50 item is not accounted for by Straus, yet he admits receiving same. Adding this $7.50 to the $112.55, we have the aggregate amount of $120.05, which should be credited as a payment on the $596.66 item, for it is the rule that where the payment of part of a debt is secured by a valid lien and the payment of the other part is not secured by any lien, that all payments made upon the principal of the debt should be applied in satisfaction of that portion of the indebtedness which is secured by a valid lien. Wingate v. Peoples' Bldg. & Loan Ass'n, 15 Tex.Civ.App. 416, 39 S.W. 999; Paschall v. Pioneer Savings & Loan Co., 19 Tex.Civ.App. 102, 47 S.W. 98; Fest v. Williams, Tex.Civ.App., 89 S.W.2d 1072; Union Central Life Ins. Co. v. Austin, Tex. Civ.App., 52 S.W.2d 536; Hillyer v. Westfall, Tex.Civ.App., 67 S.W. 1045. $120.05 deducted from $596.66 leaves $476.61, the amount of the $1,900 indebtedness, the payment of which is secured by a first lien on the entire Caddo Street property. The evidence shows that there is now and has been at all times since a short time after the execution and delivery of the $1,900 note past due and unpaid interest, and taking into consideration the payments credited by Straus on the principal, there has been due interest in excess of any and all payments as of the date of making. It seems to be the rule in this state that, where there is both principal and interest due and partial payments are made, the payments should first be applied to the discharge of the interest then due, and that if the payment exceeds the interest then due, the surplus should be applied toward discharging the principal, and interest thereafter should be computed on the balance of the principal. If the payment is less than the interest, the surplus of interest must not be taken to augment the principal but interest continues on the former principal until the payments, taken together, exceed the interest due, and then the surplus is to be applied toward discharging the principal, and interest is to be computed on the balance of the principal as before. J. I. Case Co. v. Laubhan, Tex.Civ.App., 64 S.W.2d 1079, pars. 1 and 2; Tooke v. Bonds, 29 Tex. 419, 420; Hampton v. Dean, 4 Tex. 455; 33 C.J. 250, sec. 168; Wilson v. Ware, Tex.Civ. App., 166 S.W. 705.

The judgment of the trial court is reversed and judgment is here rendered that Eugene Straus recover of and from Lelia Brooks and Ross Brooks the sum of $2,508, together with interest thereon at the rate of ten per cent per annum from September 28, 1936, and that he have judgment against Lelia Brooks and Ross Brooks and United Construction Company establishing his lien as a first and paramount lien on all and the entire interest in the Caddo Street property to secure the payment of the sum of $476.61, together with interest thereon from May 14, 1934, until paid at the rate of ten per cent per annum, and as a first and paramount lien on an undivided one-half interest in said property to secure the payment of the total amount of the judg-

ment in the sum of·$2,508, with interest thereon, and that he have foreclosure of his said liens, and that order of sale and writ of possession issue in the time and manner provided by law; that United Construction Company do have and recover of and from Lelia.Brooks, out of her separate funds and estate, the sum of $752.97, together with interest on $351.20 of said judgment from September 28, 1936 until paid at the rate of seven per cent per annum and with interest on the remainder of said judgment from September 28, 1936 until paid at the rate of six per cent per annum, and all costs incurred in this behalf, and judgment against Lelia Brooks and Ross Brooks and Eugene Straus establishing its liens on all and the entire interest in the Caddo Street property, subject and second only to the liens herein established on said property and portions thereof in favor of Eugene Straus, and said liens so established are foreclosed and order of sale and writ of possession will issue in the time and manner provided by law.

The judgment of the trial court is reversed and rendered.