INTERNATIONAL GENERAL ELECTRIC COMPANY OF PUERTO RICO, demandante y apelante, *v.* RAFAEL BUSCAGLIA, TESORERO DE PUERTO RICO, demandado y apelado.

Núm. 9206.—*Sometido:* Marzo 6, 1946. *Resuelto:* Junio 7, 1946.

*James R. Beverley, R. Castro Fernández y José López Baralt,* abogados de la apelante; *Hon. Procurador General E. Campos Del Toro y J. B. Fernández Badillo,* abogado éste del Departamento de Justicia, abogados del apelado.

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tribunal.

La demandante radicó esta acción contra el Tesorero ante la corte de distrito solicitando la devolución de $3,964.19 por contribuciones pagadas bajo protesta así como de $1,585.61 correspondientes a recargos e intereses. La opinión, sentencia y una resolución posterior de la corte de distrito, al leerse conjuntamente, constituyen en efecto una sentencia contra la demandante, que ha apelado.

Desde 1931 hasta 1936 la demandante vendió neveras y radios mediante contratos de venta condicional. Estos contratos disponían que se pagaría a plazos el precio de venta de dichos artículos. El precio "ajustado y convenido" para radios consistía de: (1) Efectivo, $97.40; (2) Impuesto, $9.74; (3) Servicio, Finanzas e Intereses, $8.50, siendo el "valor total" $115.64. Las neveras se vendían bajo contratos similares, por la suma de $305.28, descompuesta como

sigue: (1) Efectivo, $206; (2) Impuesto, $20.60; (3) Servicio, Finanzas e Intereses, $60.68; Instalación, $18.[1]

Durante este período la venta de estos artículos pagaba un impuesto del 10 por ciento sobre el precio de venta. Sección 16, incisos 9 y 27, Ley núm. 85, Leyes de Puerto Rico, 1925 (pág. 585), según fué enmendada por la Ley núm. 83, Leyes de Puerto Rico, 1931 (pág. 505). El precio de venta, a los fines de este impuesto, se definía en la sección 4 de la Ley núm. 83, como "el precio exacto a que fuere vendido el artículo . . .", con la disposición ulterior de que "En ningún caso deberá aceptarse como el precio de venta, para los fines de la contribución, un precio menor que aquél que se pague corrientemente en el mercado de Puerto Rico por artículos similares en el momento que el artículo o mercancía tributable sea vendido . . .".

La demandante dedujo la partida 3—el cargo por "Servicio, Finanzas e Intereses"—del precio de venta antes de computar y pagar la contribución sobre las ventas condicionales efectuadas por ella. No alega el Tesorero que toda la partida 3 forme parte del precio de venta y sea tributable como tal. Admite que bajo la sección 26 del Reglamento la parte de dicha partida 3 que corresponde a intereses legales sobre el precio aplazado no forma parte del precio de venta.[2] Pero arguye que la partida 3 excede del interés legal sobre el precio de venta condicional y que tal exceso es tributable como parte del precio de venta. Por otro lado, la posición de la demandante es que ninguna porción de la

---

[1] El cargo para "Instalación" de neveras no está envuelto en este caso, toda vez que el Tesorero no alega que forma parte del precio de venta y que como tal es tributable.

[2] La sección 26 prescribe lo siguiente: "En los casos de artículos introducidos para ser vendidos bajo contrato de venta condicional se cobrará el importe sobre el precio a que se venda el artículo en venta condicional y podrán aceptarse como deducciones del montante de la venta los intereses al tipo legal que se hubieren cargado a dicho precio de venta condicional, siempre que dichas ventas se efectuaren mediante facturas en las que figuren los intereses por separado del precio de venta del artículo así vendido."

partida 3 es parte del precio de venta bajo dos teorías alternativas: (1) consiste exclusivamente de interés legal; (2) incluye cargos que no son intereses, pero que tampoco son parte del precio de venta.

▮ Antes de examinar la primera teoría de la demandante, debe notarse que la evidencia no demuestra que la partida 3 consistía exclusivamente de intereses. Por el contrario, los contratos de venta condicional proveían un cargo englobado para "Servicio, Finanzas e Intereses". Si bien esta partida no se descompone en el contrato, el auditor de la demandante declaró que "Servicio, Finanzas e Intereses" de hecho consistía de dos cantidades separadas; (1) una suma específica, que eran intereses al 6 por ciento; y (2) otra suma específica, que se cargaba para tales cosas como servicio, finanza, investigación del crédito, costo de la inscripción de los contratos de ventas condicionales, comisión a los cobradores, gastos de contabilidad, gastos de panfletos, recibos y avisos, y otros gastos de cobro.[3]

El hecho de que un investigador del gobierno en su informe llame a estos cargos interés en exceso de aquél cuya deducción es permisible, no determina su verdadera naturaleza. El contrato y la evidencia incontrovertida de la demandante demuestran lo contrario. En verdad, el mismo investigador demostró estar de acuerdo con la evidencia de la

[3] La prueba de la demandante fué al efecto de que la partida 3 consistía de $8.50 para radios, con $5.23 asignados para intereses al 6 por ciento y $3.27 para otros cargos distintos a los intereses. Una asignación similar se hizo para las neveras.

Debe notarse que el récord demuestra y las partes aparentemente convienen en que la palabra "Servicio" en la frase "Servicio, Finanzas e Intereses" cubre el servicio en relación con el cobro de las mensualidades, y no el servicio en el sentido de mantener la nevera o el radio en buenas condiciones de funcionamiento. En el alegato de la demandante hay una manifestación aislada de que "servicio a la nevera cuando se descomponga" constituye un gasto posterior a la venta; pero en ningún sitio alega la demandante ni aparece de la prueba que tal cargo efectivamente se hiciera en este caso bajo la partida "Servicio". En su consecuencia, la cuestión de si un cargo separado y específico por tal servicio mecánico, como en el caso de instalación de una nevera, se consideraría como que no forma parte del precio de venta, no está envuelta en este caso.

demandante al declarar que la contribución no se había pagado íntegramente porque la segunda parte de "Servicio, Finanzas e Intereses" formaba parte del precio de venta más bien que de los intereses.

Si tuviéramos que limitarnos a la prueba aducida en la vista, no estaríamos por tanto inclinados a resolver este caso a base de la teoría de que la partida 3 consistía de intereses exclusivamente. Pero hay algo más aquí. Después de la vista, la corte de distrito dictó una opinión y sentencia que proveía que la demandante tenía derecho al reembolso de las contribuciones impuestas sobre los intereses del precio aplazado de venta de artículos vendidos bajo contratos de venta condicional, pero no de las contribuciones cobradas por otros cargos. Pero el Tesorero siempre ha admitido que tales intereses podían ser deducidos; la única controversia entre las partes ha sido si los cargos en la partida 3 que eran en adición a los intereses al 6 por ciento podían ser deducidos bajo la teoría de que o eran también intereses o en todo caso no eran parte del precio de venta. Por tanto, la opinión y sentencia dejaron de decidir las únicas cuestiones que estaban en controversia.

Entonces la demandante solicitó se enmendara la sentencia para que ordenara la devolución según se solicitaba en la demanda, alegando que su pleito era solamente por los intereses, y no por los otros cargos. El Tesorero se opuso a esta moción por el fundamento de que las alegaciones y la prueba demostraban que la controversia envolvía otros cargos fuera de los intereses. Según hemos visto, la posición asumida por el Tesorero era correcta en vista de la prueba. Pero el Tesorero no se sostuvo en esta posición. El mismo día en que se radicó la oposición del Tesorero, las partes radicaron una estipulación variando los hechos probados durante la vista. La estipulación decía que "el método usado por el Tesorero de Puerto Rico para determinar la referida partida de intereses es el de calcular, al tipo legal contractual

(12 por ciento hasta el 17 de agosto de 1933 y 9 por ciento desde dicha fecha en adelante) el interés correspondiente a cada plazo desde la fecha de la venta hasta su vencimiento . . .''; mientras que el método empleado por la demandante ''es el de calcular a un tipo no mayor del tipo legal de interés contractual, los intereses sobre el total del precio aplazado durante el total de los plazos que interesa el comprador condicional para pagar por el artículo comprado. Por ejemplo, en el . . . contrato modelo la referida partida . . . representa un poco menos del 9 por ciento . . .''.

Las partes estipularon además que si el método usado por la demandante para calcular tales intereses era ilegal, la corte debía dictar sentencia desestimando la demanda; si no era ilegal, la corte debía dictar sentencia a favor de la demandante por las sumas aquí reclamadas. Entonces, de conformidad con la estipulación, la corte de distrito, resolviendo que el interés al tipo máximo contractual estatutario de 9 por ciento era usurario si se calculaba usando el método empleado por la demandante, dictó una resolución al efecto de que el Tesorero no venía obligado a hacer reembolso alguno.

De ordinario las partes en un pleito están en libertad de estipular los hechos pertinentes al mismo. Pero aquí hubo una vista en la que la prueba demostró que solamente la primera de las dos sumas globales consignadas bajo la partida ''Servicio, Finanzas e Intereses'' era para intereses, y que se cargó el interés al 6 por ciento. Sin embargo, las partes mediante estipulación procedieron a cambiar los hechos que estaban ante la corte, sostenidos tanto por evidencia documental como oral, de manera que ''Servicio, Finanzas e Intereses'' fuera considerada como consistente de intereses exclusivamente, al tipo de 9 por ciento, pero calculado por métodos diferentes.

Sin embargo, no vamos a resolver si bajo estas circunstancias la corte debió haber decidido el caso, como lo hizo, a base de la estipulación, o a base de la prueba. No es ne-

cesario que resolvamos esta cuestión, ya que llegamos a la misma conclusión, ora se considere la partida ''Servicio, Finanzas e Intereses'' como de intereses exclusivamente al 9 por ciento o como intereses al 6 por ciento más cargos adicionales por otras partidas además de los intereses.

## I

La primera teoría de la demandante es que la partida 3, considerada como intereses al 9 por ciento exclusivamente, no es tributable como parte del precio de venta. Aquí la demandante razona como sigue: La sección 26 del Reglamento dispone que el interés legal no formará parte del precio de venta aplazado; bajo la sección 1, Ley núm. 5, Leyes de Puerto Rico, 1933, Sesión Extraordinaria,(⁴) el tipo máximo contractual de intereses es el 9 por ciento en casos como éste que no llegan a $3,000; no es usurario bajo la sección 1 de la Ley núm. 5 el proveer mediante convenio que se cobren intereses durante el término de un contrato de venta condicional al tipo del 9 por ciento sobre la suma total del precio de venta en vez de sobre los balances en descubierto a medida que se van pagando las mensualidades del precio de venta; la partida 3 no es nada más que intereses al 9 por ciento calculados de esta manera; por tanto la partida 3 es

---

(⁴)Esta Sección prescribe como sigue: ''Sección 1.—Por la presente se enmienda la sección 1 de la 'Ley sobre fijación del interés en toda clase de obligaciones', aprobada en 1 de marzo de 1902, según fué enmendada por la de 12 de marzo de 1903, y de manera que se lea como sigue:

'' 'Sección 1.—Que a falta de un contrato previo escrito, el tipo de interés sobre préstamos o prórrogas de dinero o mercancías o sobre cualquier clase de obligación o contrato, o con ocasión de un fallo o sentencia que no se haya cumplido, será de seis (6) dólares anuales sobre cada cien (100) dólares o sobre su equivalente en valor, y al mismo tipo por una suma mayor o menor, o por un período más largo o más corto; *Disponiéndose, sin embargo,* que no podrá fijarse un tipo de interés, por convenio especial, que sea mayor de nueve (9) dólares anuales sobre cada cien (100) dólares o sobre su equivalente en valor, cuando el capital objeto del préstamo o del convenio no exceda de $3,000, y de ocho (8) dólares anuales por cada cien (100) dólares, cuando pase dicha cantidad. Dentro de los límites que por esta Ley se fijan, será legal descontar letras y pagarés y otras obligaciones análogas.' '' Compilación de los Estatutos Revisados y Códigos de Puerto Rico, 1941, pág. 1254.

exclusivamente intereses legales y bajo la sección 26 del Reglamento no forma parte del precio de venta y no es tributable como tal.

Este argumento de la demandante presume que la estipulación debe ser interpretada como si dispusiera, según lo exige la sección 1 de la Ley núm. 5, que se convinieron intereses al 9 por ciento y que se convino que debían ser calculados de esta manera. Aceptando esta interpretación *arguendo*, esto todavía deja la siguiente cuestión para ser resuelta: no obstante el convenio entre las partes a ese efecto, ¿es usurario tal interés de acuerdo con la sección 1?

La médula del argumento de la demandante es que no es usurario continuar cobrando intereses al tipo máximo de ley sobre toda la cantidad de un préstamo de dinero después de haberse pagado parte de la obligación principal; y que toda vez que es legal cobrar tal interés en un préstamo, *a fortiori* es lícito tal interés sobre el precio aplazado de mercancía vendida mediante contrato de venta condicional. Pero no podemos convenir que el interés sobre un préstamo calculado en esta forma no es usurario bajo la sección 1 de la Ley núm. 5. Por el contrario, "En ausencia de estatutos específicos que lo permitan, los tribunales uniformemente han resuelto que en caso de un préstamo a pagarse por mensualidades la computación de un tipo de interés que no exceda del máximo estatutario, sobre la cantidad original del préstamo por todo el término del préstamo, en vez de sobre los balances adeudados en disminución, viene a ser usura, si el importe del interés así cargado excede del tipo máximo estatutario computado sobre el balance adeudado en disminución durante el tiempo en que tales balances estén pendientes." *Vee Bee Service Company* v. *Household Finance Corp.*, 51 N.Y.S.2d 590, 606–7 (1944), citando numerosos casos a este efecto; *Brower* v. *Life Ins. Co.*, 86 Fed. 748 (Corte de Circuito, N. C., 1898); *Connor* v. *Minier*, 288 P. 23 (Calif., 1930). La regla está expresada en 6 Williston *on Contracts*, Sec. 1695,

pág. 4801, con los casos que la sostienen citados en la nota 14, como sigue: "En general las cortes, sin embargo, condenan por usurario un convenio para el pago de intereses al tipo máximo legal por todo el período de un préstamo cuando se estipulan pagos adelantados de mensualidades para acreditarse al capital."

No estamos convencidos de que los casos citados por la demandante — *Harrop* v. *National Loan & Inv. Co.*, 204 S. W. 878 (Tex., 1918); *Western Loan & Building Co.* v. *McGillivrae*, 251 P. 770 (Wash., 1926), especialmente este último—apoyan su posición de que el interés así convenido sobre un préstamo no es usurario. Pero asumiendo que la apoyen, no contienen razonamiento alguno sobre esta cuestión, y militan en contra del abrumador peso de las autoridades.

Nada encontramos en la sección 26 del Reglamento que justifique la manifestación de la demandante de que dicha sección expresamente autoriza el cálculo de intereses al 9 por ciento en la forma defendida por la demandante. Tampoco podemos convenir con el argumento de la demandante de que la frase "por un período más largo" de la sección 1 de la Ley núm. 5 permite un convenio para el cobro de intereses a través de un contrato de venta condicional de tres años al 27 por ciento o al 9 por ciento anual por todos los tres años. Dicha frase debe interpretarse en su totalidad—"por un período más largo o más corto"—que a la luz de todo el estatuto sencillamente significa que el tipo de interés permitido es el mismo, ya el préstamo sea por un período anual, más largo o más corto.

Encontramos que tampoco tiene méritos el argumento de la demandante de que toda vez que la sección 1 no contiene disposición alguna en cuanto a la forma de cobrar los intereses, las partes están en libertad de acordar la forma de calcular el tipo contractual de interés. Ya hemos visto la dificultad de este argumento, *Vee Bee Service Company* v.

*Household Finance Corp.*, supra: la forma de computar sostenida por la demandante resulta en el cobro de intereses en exceso del 9 por ciento lo que está prohibido por la sección 1 de la Ley núm. 5.

Hemos estado suponiendo que la estipulación quería decir que la demandante calculaba los intereses sobre todo el precio de venta durante el término del préstamo, no obstante el pago de mensualidades de la obligación principal, a base de un convenio entre las partes de que se usaría esta forma de cálculo. Pero la estipulación está sujeta a una interpretación diferente: que las partes convinieron que el interés sería el 9 por ciento pero no acordaron nada en cuanto a la forma de calcularlo. Sin embargo, esto no afectaría el resultado a que hemos llegado. Los casos en que descansa el Tesorero—*Connecticut* v. *Jackson,* 1 Johns. Ch. 13 (N. Y., 1814), 7 Am. Dec. 471; *Hart* v. *Dorman,* 2 Fla. 445 (1849), anotado en 50 Am. Dec. 285; *Story* v. *Livingston,* 38 U. S. 357, 370; *Woodward* v. *Jewell,* 140 U. S. 247; *Wallace* v. *Glaser,* 46 N. W. 227 (Mich., 1890); *Straus* v. *Brooks,* 126 S.W.2d 542 (Tex., 1939); *Savage* v. *Howell,* 118 P. 2d 1113 (N. M., 1940)—demuestran que la regla de la mayoría, con la cual convenimos, es que los intereses se calculan solamente sobre el balance adeudado, en ausencia de un convenio en contrario.

Si la estipulación significa que se acordó el pago de interés al 9 por ciento con un convenio de que éste se calcularía de la manera defendida por la demandante, tal interés era usurario y no podía deducirse del precio de venta bajo la sección 26 del Reglamento, que dispone que solamente podrá deducirse el interés *legal.* Si la estipulación quiso decir que las partes no acordaron la forma de calcular el interés, solamente puede éste cobrarse al 9 por ciento sobre los balances adeudados. Por tanto concluimos que bajo cualquier teoría, habiendo estipulado las partes que la partida 3 debe considerarse como intereses exclusivamente al 9 por

ciento, la demandante sólo podía deducir bajo la sección 26 del Reglamento los intereses al 9 por ciento calculados sobre los balances adeudados del precio de venta en disminución. Y las partes estipularon que si ésta era la ley, la demandante no tenía derecho a desembolso alguno.(⁵)

## II

La segunda teoría de la demandante está basada en la prueba aducida durante la vista. Como ya se ha indicado, esta prueba fué que la partida 3 consistía de dos cantidades específicas: (a) una para intereses al 6 por ciento; (b) la otra para ciertos cargos de ''finanzas'' aparte de los intereses, véase nota 3. En cuanto a (a), el Tesorero admite que bajo la sección 26 del Reglamento tales intereses son deducibles del precio de venta al calcular la contribución.(⁶) Alega la demandante que en cuanto a (b), aunque los cargos no constituyan intereses, tampoco forman parte del precio de venta y por tanto no son tributables como tal.(⁷) Su

(⁵)La demandante no cita, en apoyo de sus argumentos en cuanto a I, los casos que discutimos en II y que resuelven que los cargos de ''finanzas'' en una venta condicional de mercancía no constituyen usura aun si tales cargos sobrepasan el tipo máximo estatutario de considerarse tales cargos como intereses. Anotación, 143 A.L.R. 238. La demandante aparentemente se ha dado cuenta que estas autoridades no son de aplicación en cuanto a I porque, como veremos, el *ratio decidendi* de dichos casos es que tales cargos no son usurarios porque bajo tales contratos son parte del precio de venta más bien que intereses. Por tanto no podían aplicarse aquí donde, según la estipulación, toda la partida 3 está clasificada como intereses.

(⁶)No alega el Tesorero que la deducción de los intereses al 6 por ciento sea improcedente porque se cobraron sobre todo el precio de venta durante la vigencia del contrato sin que se rebajase el interés al pagarse las mensualidades sobre el precio de venta. Los intereses al 6 por ciento cobrados en esta forma sobre contratos de pagos mensuales por períodos de uno y tres años, no serían deducibles bajo la sección 26 del Reglamento en tanto en cuanto exceden del tipo contractual máximo del 9 por ciento calculado solamente sobre los plazos adeudados, y no sobre todo el precio de venta.

(⁷)La sección 26 del Reglamento prescribe que podrán deducirse del montante de la venta los intereses al tipo legal, siempre que en la factura aparezcan los intereses separados del precio de venta. Podría argumentarse que, al incluir los dos cargos consignados en la partida 3—uno para intereses al 6 por ciento y uno para otros cargos aparte de los intereses—en un solo asiento en el contrato de venta condicional llamado ''Servicio, Finanzas e Intereses'', dejó la deman-

argumento es que estos cargos no son parte del precio de venta (a) porque "representan la suma *adicional al precio de venta del artículo* que el comprador se compromete a pagar por el privilegio de pagar a plazos el precio de venta del artículo"; y (b) porque tales cargos "van a compensar al vendedor por gastos posteriores a la venta."

■ (a) *¿Constituyen estos cargos una suma adicional al precio de venta siendo en su consecuencia no tributables?* Aquí la demandante descansa en los casos que resuelven que tales cargos de "finanzas" en contratos de ventas condicionales no infringen estatutos de usura, a pesar del hecho de que las sumas cargadas, de considerarse como intereses sobre el precio de venta adeudado, exceden del tipo máximo de interés permitido bajo tales estatutos. Anotaciones, 143 A. L.R. 238; 57 A.L.R. 880; 48 A.L.R. 1442. Podríamos presentar dos argumentos contra la aplicación aquí de estas autoridades. En primer lugar, no nos incumbe determinar, como se determinó en dichos casos, si tales cargos son intereses usurarios y por tanto ilegales en cuanto a las partes contratantes. Sólo vamos a determinar si el dinero adeudado por el comprador al vendedor bajo un contrato de venta condicional—ya sea el convenio legal e ilegal en cuanto a ellos se refiere—forma parte del precio de venta de los artículos vendidos según éste se define en una ley contributiva. En segundo lugar, esos casos todos tratan la cuestión a base de la suposición de que estos cargos constituyen intereses; mientras que en este caso la prueba de la propia demandante fué que estos cargos eran para algo distinto a los intereses.([8])

_____

dante de cumplir con la sección 26 y por tanto a lo sumo sólo puede deducir el primero. Pero pasemos por alto dicho argumento y procedamos a determinar si los cargos que no sean intereses son o no parte del precio de venta, a pesar del hecho de que en el contrato de venta condicional fueron englobados con los intereses en el asiento llamado "Servicio, Finanzas e Intereses".

([8]) En una controversia entre un deudor y un acreedor en cuanto a si un préstamo o contrato de venta condicional es usurario, las cortes no vienen obli-

Sin embargo, dejamos a un lado estos argumentos. Y suponemos, sin decidirlo, (a) que adoptaríamos en esta jurisdicción la regla establecida en estos casos, y (b) que esta regla es pertinente a los hechos de este caso. Pero aun cuando asumamos tal posición, que es la más favorable para la demandante que podemos asumir, encontramos que el raciocinio de estos casos, al aplicarse a los hechos del presente, impone una conclusión contraria a la contención de la demandante.

La teoría de estos casos es que tales cargos de "finanzas", cuando se hacen en relación con una venta condicional, no se pagan por la prestación del dinero, sino más bien son parte del precio de venta aplazado de los artículos que el comprador conviene pagar. Dicho en otra forma, el vendedor puede fijar un precio para ventas al contado y un precio mayor para ventas a plazos. *Harper* v. *Futrell,* 164 S. W. 2d 995 (Ark., 1942); *Dunn* v. *Midland Loan Finance Corporation,* 289 N. W. 411 (Minn., 1939); *Commercial Credit Co.* v. *Tarwater,* 110 So. 39 (Ala., 1926); 143 A.L.R. 238, 251; *Usury Statutes and Instalment Sales,* 48 Yale L. J. 1102; Berger, *Usury in Instalment Sales,* 2 Law & Contemp. Prob. 148; Ecker, *Commentary on "Usury in Instalment Sales",* 2 Law & Contemp. Prob. 173; 23 Cornell L. Q. 619; 35 Col. L. Rev. 1322.(⁹)

Podría ser cierto, como afirman estos casos, que la concesión de crédito sea uno de los factores comerciales que cada

gadas por cualquier otro nombre que se le dé a lo que en sustancia es interés. *Vee Bee Service Company* v. *Household Finance Corp.,* supra; 143 A.L.R. 238. Pero esos casos escasamente constituyen autoridad para la proposición inversa de que un vendedor contribuyente que demuestra por su propia prueba que se hicieron ciertos cargos para partidas que no eran intereses tiene derecho bajo la sección 26 del Reglamento a deducir del precio de venta tales cargos como intereses.

(⁹)*Cf.* Sección 3 de la Ley núm. 47, Leyes de Puerto Rico, 1916, Compilación de los Estatutos Revisados y Códigos de Puerto Rico, 1941, pág. 1357, que lee en parte como sigue:

"Sección 3.—La Sección 4 de la Ley sobre fijación de interés en toda clase de obligaciones, aprobada en 1 de marzo de 1902, y enmendada por la Ley de

comerciante considera al fijar su precio de venta; y que consecuentemente la diferencia en precio entre una venta de contado y una condicional a plazo no es, por lo menos en parte, interés, sino que representa, hasta donde excede del interés legal, un precio de venta mayor que está justificado por los varios gastos y riesgos de pérdida que no concurren en la venta al contado. Suponemos, sin decidirlo, que si se presenta la cuestión en un caso apropiado, nos persuadirían estas consideraciones y resolveríamos que tales cargos de "finanzas", cuando se hacen en relación con una venta condicional, no son usurarios porque forman parte del precio de venta, y no son intereses. Pero esa conclusión no le sería de gran ayuda a la demandante precisamente porque bajo nuestro estatuto todos los cargos que son parte del precio de venta están sujetos a la contribución. Tales "adiciones" al precio de venta forman por lo tanto parte del precio de venta y en su consecuencia están sujetos a la contribución aquí envuelta.

 (b) *¿Son estos cargos gastos posteriores a la venta y por tanto no tributables?*

Esta contención está muy relacionada, de no ser sustancialmente similar, al argumento de la demandante en (a) que estos cargos son en adición a y no forman parte del precio de venta. Existen innumerables gastos generales en los cuales incurre un comerciante en adición a lo que le cuestan los artículos que vende. Y necesariamente tiene que añadirle estos gastos a su precio de venta al público, directa o indirectamente, si quiere permanecer en el negocio. Muchos de estos gastos—por ejemplo, sueldos, renta y anuncios—son

14 de marzo de 1907, queda por la presente enmendada y se entenderá redactada en la forma siguiente:

" 'Sección 4.—Excepto como queda autorizado por la Sección 3 de esta Ley, ninguna persona podrá exigir o recibir, directa o indirectamente, dinero o mercancías, a un tipo de interés mayor por el préstamo o la prórroga del préstamo de algún dinero, que el tipo fijado por la presente. *Nada de lo contenido en esta Ley se interpretará en el sentido de prohibir la venta de efectos al contado a un precio más bajo que al crédito.*' " (Bastardillas nuestras).

usualmente imputables a la operación general del negocio más bien que a artículos específicos. Sin embargo, no cabe la contención de que bajo la sección 4 de la Ley núm. 83—que provee que el precio de venta a los fines de esta contribución será el precio corriente del mercado—puede un contribuyente deducir tales gastos del precio de venta tributable. Los factores que determinan el precio de venta son el costo de la mercancía, los gastos y la ganancia. Pero una vez que el precio de venta se calcula, si permitiéramos deducciones del mismo para computar la contribución sobre el precio de venta, estaríamos alejándonos del mandato legislativo.

La demandante no ataca esta proposición. Alega, sin embargo, que solamente los gastos incurridos antes a o coetáneamente con la venta son los que forman parte del precio de venta y no pueden por tanto deducirse de éste al calcular la contribución; y que los gastos incurridos con posterioridad a la venta no son parte del precio de venta y por tanto no se incluyen en la suma tributable.

Al traer este argumento la demandante descansa en la sección 24 del Reglamento que prohibe que se deduzca del precio de venta "las comisiones que se pagaren a agentes u otros gastos", y en la sección 25 que prohibe que se deduzcan los gastos de "acarreo y entrega y otros gastos similares que pudieran estar incluídos en el precio de venta del artículo." Alega la demandante que bajo la doctrina de *ejusdem generis* la prohibición contra las deducciones del precio de venta sólo se aplica a gastos similares a comisiones de agentes y gastos de entrega, que caracteriza la demandante como gastos anteriores a o coetáneos con la venta; y que por tanto los cargos en este caso, que alega la demandante no son similares porque fueron incurridos con posterioridad a la venta, pueden deducirse de la base tributable por no ser parte del precio de venta.

En apoyo de este razonamiento, la demandante cita el caso de *Fitch Co.* v. *United States*, 323 U. S. 582. Dicho

caso trataba de un estatuto federal que imponía contribución solamente al precio de venta del fabricante o mayorista. Expresamente excluía del precio de venta tributable los gastos incurridos por el fabricante en una venta a un comerciante detallista para entregar la mercancía u otros cargos similares. La corte, invocando el lenguaje del estatuto, la intención del Congreso y la regla de ejusdem generis, resolvió que a tenor con dicho estatuto los gastos de anuncio y de venta del fabricante no eran "otros cargos similares" dentro de la categoría de gastos de entrega y por tanto no eran deducibles del precio de venta tributable. La corte indica, entre otras cosas, que los gastos de anuncio y venta de un fabricante se incurren antes, mientras que los gastos de entrega y otros similares son incurridos después, de la venta a un comerciante detallista.

Nuestro estatuto es bastante diferente. En este caso específico la contribución se impone por el precio de venta al detalle. Y cubre un campo mucho más amplio: los cargos de entrega al consumidor son parte del precio de venta tributable. En verdad, si fuéramos a aplicar a estos hechos la decisión del caso de *Fitch* de que los gastos de entrega son posteriores a la venta, la teoría de la demandante caería sin más discusión ya que la demandante alega lo contrario: que los gastos de entrega no son posteriores sino que ocurren antes a o coetáneamente con la venta; los gastos posteriores a la venta como el cargo de "finanzas" por tanto no son similares a los gastos de entrega; y como consecuencia gastos posteriores como el cargo de "finanzas" son deducibles del precio de venta tributable no obstante la sección 25 del Reglamento prohibir tales deducciones de entrega y otros gastos similares.

Pero aun si conviniéramos con la demandante en que, a pesar del hecho de que en una venta por un fabricante los gastos de entrega son posteriores a la venta de un modo u otro la regla es diferente en una venta al detal y en ésta

los gastos de entrega son coetáneos con la venta, el caso de *Fitch* y la doctrina de ejusdem generis apoyarían la teoría de que las secciones 24 y 25 del Reglamento autorizan la deducción de estos cargos de "finanzas" del precio de venta solamente si encontráramos algo en nuestro estatuto o en el Reglamento al efecto de que todos los gastos posteriores a la venta son deducibles y todos los anteriores no son deducibles. Pero ni el estatuto ni el Reglamento trazan tal línea divisoria. Más bien el impacto del estatuto es específico: impone contribución a todo el precio de venta. Y las secciones 24 y 25 del Reglamento nada tienen que ver con el problema ante nos. Le prohiben a un vendedor deducir de su precio de venta, al calcular la contribución, las comisiones de los agentes, los gastos de entrega y otros gastos similares. Por tanto el vendedor debe incluir tales partidas en su precio de venta a los fines contributivos. Pero en cuanto a los otros gastos, el vendedor, al fijar su precio de venta, puede o no tomar en consideración ciertos gastos en que ha incurrido antes de la venta o los que incurrirá después de la misma, tales como gastos de "finanzas" que requieren que el precio de venta a plazos sea mayor que al contado. Hablando en términos generales, toca al vendedor determinar esto. Pero una vez que fija un precio mayor para ventas a crédito, el precio en su totalidad—ora el vendedor haya incluído o no en el mismo gastos de finanza que no son intereses—está sujeto a la contribución. Resolver lo contrario sería darle paso a la contención de que tanto en las ventas de contado como a crédito el vendedor podría enviarle una factura al comprador con cargos separados de administración, anuncio o gastos de venta y entonces deducirlos del precio de venta a los fines de calcular la contribución sobre el mismo, hasta que a la larga el vendedor estaría pagando la contribución sobre lo que le costó la mercancía, y no sobre el precio de venta al comprador según lo contempla el estatuto.

Reconociendo que un cargo por intereses sobre una venta condicional, cuando se factura separadamente, no es parte del precio de venta, sino más bien la renta por el capital del cual se priva temporalmente el vendedor en una venta condicional, la sección 26 del Reglamento correctamente dispone que esto no forma parte del precio de venta tributable. De igual manera, el Tesorero no incluyó al calcular la contribución sobre neveras un cargo separado que no tiene relación alguna con el precio de venta del artículo—el cargo por instalación. Pero el hecho de que las secciones 24 y 25 del Reglamento dispongan que las comisiones, los gastos de entrega y otros gastos similares *no* pueden deducirse, aun si presumiéramos que estos gastos ocurren antes a o coetáneamente con la venta, no conlleva la conclusión, ya sea por ejusdem generis o por alguna otra doctrina, de que *pueden* deducirse otros gastos sencillamente porque son incurridos con posterioridad a la venta. Por el contrario, la fórmula permanece como siempre fué: ¿Eran los cargos en cuestión parte del precio de venta? Y ya hemos visto que lo eran. De necesitarse algo más, debe recordarse que el propio contrato de venta condicional dice que la venta condicional "se efectuará por el precio ajustado y convenido" de ciertas sumas específicas, una de las cuales incluye estos cargos de "finanzas".

La última contención de la demandante es que "El cargo por gastos de cobro (*finance*) es el que hace el vendedor al comprador para resarcirse de los gastos que necesariamente tiene que incurrir, *posteriormente a la venta* y entrega del artículo, como resultado de haberle vendido el artículo a plazos o a crédito . . . A lo sumo, este cargo podría clasificarse o definirse como *el precio del servicio* que le presta el vendedor al comprador *posterior* a la venta y entrega del artículo, pero nunca como parte del 'precio de venta' del artículo. Tan es así, que si no se rinde este servicio debido a que *posteriormente* al otorgamiento del contrato de venta a

plazos el comprador decide pagar por el artículo de contado el vendedor le descuenta este cargo y se limita a cobrarle los intereses sobre el precio aplazado desde la fecha del otorgamiento del contrato hasta la fecha en que se efectúa el pago del precio del artículo.'' Pero no constituye contestación alguna a la contención de que estos cargos son parte del precio de venta el decir que son eliminados si el comprador acelera sus pagos. Quizá bajo estas circunstancias la demandante tendría derecho a que se le reembolsaran las contribuciones pagadas sobre estos cargos. Pero esa cuestión no está envuelta aquí. Cuando se otorgó el contrato se hicieron los cargos; y se hicieron como parte del precio de. venta. Esto es suficiente para exigir que se incluyan en el precio de venta tributable.

Como cuestión de hecho, aun si la fórmula fuera al efecto de que todos los gastos antes de la venta no son deducibles y todos los gastos posteriores a la venta son deducibles, algunas de las partidas que están englobadas bajo ''Servicio, Finanzas e Intereses'' como una suma para cargos de ''finanzas'', tales como investigación del crédito, obviamente se incurren antes a o coetáneamente con la venta en vez de posteriormente a la misma; y otros cargos, tales como los gastos de llevar esas cuentas a los libros, y los gastos de panfletos, recibos y avisos, son cargables a los gastos generales del negocio en relación con las ventas a crédito más bien que a las ventas de ciertos artículos específicos.

Podría hacerse un argumento final en apoyo del resultado a que hemos llegado. La demandante invoca las secciones 24 y 25 del Reglamento y trata, con la ayuda de ejusdem generis, de aplicar dichas secciones a las ventas condicionales. Estas secciones de su faz nada tienen que indique que fué la intención que se aplicaran a la situación especial de ventas condicionales. Por otro lado, la sección 26 del Reglamento trata expresamente de las ventas condicionales. Y específicamente dice que *los intereses* en un contrato de

venta condicional son deducibles. Es innecesario que vayamos tan lejos que resolvamos que bajo la teoría de *expressio unius est exclussio alterius* solamente los intereses son deducibles en un contrato de venta condicional. Aquí sólo es necesario decir que los cargos que no son intereses en ventas condicionales no son deducibles bajo la sección 26 o bajo alguna otra sección cuando el contrato no pretende especificar el importe y propósito de cada cargo. *Cf.* nota 7.

Este punto se torna claro cuando recordamos que la teoría de la demandante está predicada en la premisa de que el precio de venta tributable—el precio corriente en el mercado—es el mismo tanto para ventas de contado como a crédito, y que los cargos adicionales fuera de los intereses en las últimas son para servicios posteriores a la venta. Es evidente que éstos no son los hechos en este caso, donde los cargos están englobados en una sola partida del precio de venta. No estamos resolviendo que las partes no puedan en cuanto a algunas partidas contratar servicios *bona fide* que (1) han de prestarse con posterioridad a la venta, y que (2) no han de considerarse como parte del precio de venta. En verdad, en este mismo caso el Tesorero así ha considerado el cargo de "instalación". Y el cargo por algunas de las partidas englobadas aquí en una sola suma, tales como inscripción del contrato de venta condicional, quizá podría ser objeto de tal convenio. *Cf.* 23 Cornell L. Q. 619, 623; 6 Williston, supra, sección 1694, pág. 4792; Anotaciones, 1 A.L.R. 834, 105 A.L.R. 795; *Connor* v. *Minier,* supra, pág. 25; *Bowden* v. *Gabel,* 76 P.2d 334 (Mont., 1937); *Vee Bee Service Co.* v. *Household Finance Corp.,* supra, pág. 604. Pero la partida "Servicio, Finanzas e Intereses" no fué excluída del precio de venta en el contrato. Es más, incluía dos sumas englobadas: (*a*) intereses al 6 por ciento; (*b*) otros cargos que no eran intereses. Estos últimos cargos pueden haber incluído partidas que podían así clasificarse. Pero ni en el contrato de venta condicional ni aparentemente

en los libros de la demandante existía separación de los cargos aparte de los intereses con un asiento separado de la suma cargada a cada uno. Todos fueron consolidados y se les asignó un cargo global para ellos. Bajo estas circunstancias no podemos decir que (*b*) en su totalidad cae dentro de dicha categoría. Por tanto dejamos sin resolver la cuestión de si bajo otras circunstancias algunos de los cargos aquí envueltos aparte del interés podían ser deducidos del precio de venta al calcular la contribución de que se trata aquí.

*Habiendo la demandante dejado de demostrar bajo cualquiera de sus dos teorías que tenía derecho a que se le reembolsaran las contribuciones pagadas bajo protesta, la sentencia y la resolución de la corte de distrito serán confirmadas.*